TERRY DAUM,

Plaintiff(s),

v.

DEPARTMENT OF CORRECTIONS AND

COMMUNITY SUPERVISION,

Defendant(s).

**COMPLAINT**
(Pro Se Prisoner)

**Case No.** 25-cv-00798 -JAM
(Assigned by Clerk's
Office upon filing)

**Jury Demand**
☑ Yes
☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's social security number, taxpayer identification number, or birth date; the name of a person known to be a minor; or a financial account number. A filing may include *only*: the last four digits of a social security number or taxpayer-identification number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. *See* Fed. R. Civ. P. 5.2.

---

I.    **LEGAL BASIS FOR COMPLAINT**

This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution and laws of the United States. Indicate below the federal basis for your claims.

☑ 42 U.S.C. § 1983 (state, county, or municipal defendants)
☐ *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) (federal defendants)
☐ Other (please specify) _____

**II.   PLAINTIFF(S) INFORMATION**

Name:                    *Terry Daum*

Prisoner ID #:           *97-A-1295*

Place of detention:      *Attica Correctional Facility*

Address:                 *Box 149*

                         *Attica, NY 14011*

Indicate your confinement status when the alleged wrongdoing occurred:

☐ Pretrial detainee

☐ Civilly committed detainee

☑ Convicted and sentenced state prisoner

☐ Convicted and sentenced federal prisoner

☐ Immigration detainee

Provide any other names by which you are or have been known and any other identification numbers associated with prior periods of incarceration:

*Terry Daum #90B2726; Terry Daum #93A 1314*

If there are additional plaintiffs, each person must provide all of the information requested in this section and must sign the complaint; additional sheets of paper may be used and attached to this complaint.

**III.   DEFENDANT(S) INFORMATION**

Defendant No. 1:         *(see, Attached)*

                         Name (Last, First)

                         _____

                         Job Title

                         _____

                         Work Address

                         _____

                         City              State       Zip Code

Defendant No. 2:         *(see, Attached*

                         Name (Last, First)

                         _____

                         Job Title

2

Work Address

_____

City                    State              Zip Code

Defendant No. 3:    *( see, Attached )*

Name (Last, First)

_____

Job Title

_____

Work Address

_____

City                    State              Zip Code

Defendant No. 4:    *( see, Attached )*

Name (Last, First)

_____

Job Title

_____

Work Address

_____

City                    State              Zip Code

If there are additional defendants, the information requested in this section must be provided for each person; additional sheets of paper may be used and attached to this complaint.

IV.    **STATEMENT OF FACTS**

State briefly and concisely the facts supporting your claims. Describe the events in the order they happened. Your statement of facts should include the following:

- o   The date(s) on which the events occurred
- o   Where these events took place (identify the facility and, if relevant, the specific location in the facility)

3

∘ How each defendant was involved in the conduct you are complaining about

If you were physically injured by the alleged misconduct, describe the nature of your injuries and the medical evaluation and treatment you were provided. You need not cite to case law or statutes or provide legal argument in the Statement of Facts. Use additional sheets of paper if necessary.

(see, Attached)

## V.    STATEMENT OF CLAIM(S)

State briefly and concisely the constitutional and/or statutory basis for each claim you seek to assert and identify the defendant(s) against whom each claim is

4

asserted. Commonly asserted claims include: excessive force; failing to protect; deliberate indifference to medical needs; unconstitutional conditions of confinement; denial of due process in a disciplinary or other proceeding; denial of equal protection; retaliation for the exercise of a First Amendment right; and interference with free exercise of religion. Legal argument and case citations are not required. Use additional sheets of paper if necessary.

### FIRST CLAIM

_(see, Attached )_

### SECOND CLAIM

_(see, Attached )_

### THIRD CLAIM

**VI.    RELIEF REQUESTED**

State briefly what relief you are seeking in this case.

_(see, Attached )_

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _November 23, 2024_          _Perry Daum_
Plaintiff's signature
(All plaintiffs must sign the complaint)

UPDATED

Terry Daum
Attica Corr. Fac.
Box 149
Attica, NY 14011

Eastern District of NY
Clerk of The Court
225 Cadman Plaza East
B'klyn, NY 11201

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT L.D.N.Y.
★ FEB 05 2025 ★
BROOKLYN OFFICE

January 3rd, 2025

RE: Terry Daum v. NYSDOCCS; 42 u.s.c. §1983

Dear Clerk of The Court,

I have enclosed a multiple jurisdiction civil complaint against NYS-DOCCS.
I'm seeking to file this civil action within your Court since my criminal conviction falls within the Eastern District of New York; and, I seek Injunction Relief, involving my removal from the NYS-DOCCS prison system.
Also, none of the six prisons fall within the Eastern District. This Court can be more of a referee, independant of where each complaint occurred. For your information,

Five Points - Western District
Greene Haven - Southern District
Sullivan - Southern
Great Meadow - Northern District
Upstate - Northern District
Auburn - Northern District

And, I'm currently located in the Western District of New York (Attica CF).
Initially, I was seeking to file in the Northern District (see materials enclosed). But, I would be grateful to either file in your court; or, where I'm currently housed, Western District. However, I pray for your Court's jurisdiction.

Thank you,
Terry Daum 1/3/25

REC'D IN PRO SE OFFICE
FEB 5 '25 PM12:51

Attica January 3, 2025

Terry Daum

## PARTIES INVOLVED

1. Plaintiff, Terry Daum, is presently located in the NYS-DOCCS, Attica Correctional Facility, Box 149, Attica, NY, 14001

2. Defendants, are, upon belief, still employed by NYS-DOCCS. However, Great Meadow and Sullivan Correctional Facilities, are closed prisons.

   a) **Five Points** : Correction Officers, Hunt, Ammerman, Eckert and Espinal. Corrections Sergeant, P. Hubbard; Lieutenant, John Doe; Sergeant, John Doe; Correction Officers, John Doe (1-2); Registered Nurse Jane Doe; Office of Mental Health, John Doe; and, Senior Offender Rehabilitation Coordinator, Wenderly, upon belief, are still employed at: Five Points Correctional Facility, located at: 6600 State Route 96, Caller Box 119, Romulus, NY 14541;

   b) **Greene Haven** : Correction Officers, John Doe (1-2), Lieutenant, Jane Doe; Registered Nurse, Jane Doe; and, Offender Rehabilitation Coordinator, Jane Doe, upon belief, are still employed at: Greene Haven Correctional Facility (transit Unit) at: 594 Route 216, Stormville, NY, 12582;

   c) **Great Meadow** : Correction Officer, St. John and John Doe's (1-5); and Correction Sergeant John Doe's (1-2): closed prison;

   d) **Upstate** : Correction Officers, John Doe's (1-5); Corrections Sergeant, John Doe; Registered Nurse, Powell and Jane Doe; Office of Mental Health, Jane Doe; and

Correction Officer, Jane Doe, upon belief, are still employed at: Upstate Correctional Facility, 309 Bare Hill Road, Malone, NY, 12953;

e) **Sullivan**: Correction Officer, Simpson, Stauch, Deddazio, Richards, Luiso, and John Doe; Lieutenant Jordan (Acting Captain): closed prison; and,

f) **Auburn**: Medical Response Team, Correction Officers, John Doe's (1-3); Correction Officer, Nuffer; Correction Sergeant, John Doe; and, Registered Nurse, Jane Doe, upon belief, are still employed at: Auburn Correctional Facility, 135 State Street, Auburn, NY, 13024.

Terry Daum

_Terry Daum_

January 3, 2025

RE: Terry Daum v. ? Hunt (Five Points) ?
    Terry Daum v. NYS Doccs (six prisons) ?

<u>STATEMENTS OF FACTS</u>

## <u>Five Points Incident</u>

1. On or about July 15th, 2024, I was housed in 10 Block, B-1-13 cell (bottom bunk), at the Five Points Correctional Facility (Five Points).

2. In the early afternoon of the above mentioned date and while in my cell, I was advised, upon belief, by Correction Officer, Hunt (Hunt), to pack all of my personal belongings, since I was moving to another location within the same housing unit. However, since this involved me moving to a top-bunk, I asked to see an area supervisor. I could not be housed on a top-bunk, due to medical which was already documented medically, Officer Hunt promised he would relay my concerns to the area supervisor. In turn, I packed all my personal belongings because I was not refusing another cell assignment.

3. Upon return, Hunt advised me that he spoke with the area supervisor, Corrections Sergeant, P. Hubbard (Hubbard), and "he said your moving," to the new cell assignment. Again. I asked to speak with the area supervisor. I also requested to speak with medical and or, the Office of Mental Health, due to medical concerns. I explained to Hunt that there were other available cells within

the housing unit that were empty and such would of accommodated my medical needs. However, I was advised by Hunt that "they said this move is going down Daum since they need this specific cell." I was also advised that the Corrections Lieutenant, John Doe (Lieutenant Doe), was also aware about my concerns, who was present in the housing unit.

4. After the lunch meal was complete, Hunt and Correction Officer, Eckert (Eckert), Ammerman (Ammerman), and Espinal (Espinal), entered my cell while Hubbard stood in the cell door entrance. Officer Ammerman grabbed his spray from his waist and I immediately retreated inside the shower of my cell saying "why are you about to spray me, I'm not refusing." At this point, Hubbard asked me "are you moving?". In response. I said "I'm not refusing, you see my cell is packed".

5. Instead of following the use of force policies, Hubbard gave Ammerman the head nod and at that point, Ammerman rushed towards the shower, where I stood inside and he started spraying me with pepper spray. Hunt, Eckert and Espinal, also rushed the shower and dragged me out the area. I did not resist. I was being attacked with punches, while these same officers tackled me aggressively. Once handcuffed, then several more punches, including knee type blows to my body and head. Those blows continued for over a minute or two, while

Hubbard, in a low voice kept repeating "stop resisting".
I could not defend or resist in any kind of way.
After this attack, I was then aggressively removed
from the cell area. Hubbard promoted the attack
and failed to intervene.

6. Upon belief, Lieutenant Doe, authorized the
assault and battery, and failed to supervise.

7. I was eventually escorted to the facility
clinic where I complained about pain to my wrist, from
the handcuffs being extremely tight and injuries to
my left elbow, pain on my head and body, including
a minor wound to my left elbow. The registered
Nurse, Jane Doe (RN Doe), then shoved two pills in
my mouth, upon belief, ibuprofen. My eyes still
still irritated, which burned from the pepper spray
and I continued to complain about my injuries to
my left elbow, including other injuries-pain, to
my body. RN Doe failed to treat me and
document all my medical complaints.

8. I was then escorted to the Special Housing
Unit (SHU), by three officers (officer Doe), and Sergeant
John Doe (Sergeant Doe), then placed me in what
appeared to be a slop sink that had a shower. While
still handcuffed and fully dressed, the shower water
was turned on by Officer Doe and I was placed
under hot water by Officer Does, for enhancement
of the pepper spray to intentially irritate me
more. These officer Doe's, did expose me to cruel

and unusual punishment. Sergeant Doe failed to intervene or supervise.

9. I was then escorted to the strip room to be searched and two cigarettes, I was placed in a contraband watch cell by Sergeant Doe. This watch cell was located in the Rehabilitation Mental Health Unit. This cell was filthy and in humane, based its conditions.

10. Upon arrival. I immediately surrendered the two cigarettes to a corrections officer and requested to be released from the strip room. I was denied. I then requested an x-ray from other security staff, including Registered Nurse, Jane Doe (RN Doe), and the Office of Mental Health, John Doe (OMH Doe), because I was not in possession of any contraband. I was told that they would give me an x-ray to clear me from the strip room, but the officer told RN Doe and OMH Doe "he assaulted staff." Because of that nobody would assist me and was deliberately denied the x-ray by medical. I never received the x-ray, which led to me being in the strip room additional days. RN Doe and OMH Doe, failed to intervene and participated in this form of punishment.

11. This contraband watch cell was very filthy. I received two body mats, both of which smelled of musk and feaces. I tried to get clean linen, but was denied. I have high blood

pressure, but was denied sufficient water, barely a cup of water for lunch or dinner. I was also denied hugiene to clean myself before and after meals; and or, after bathroom usage. I was giving plastic urinals that had other inmate, old urine in the containers, without providing me with gloves to hold the contaminated urinals. I was dehydrated and exposed to fluorescent lights 24 hours a day. There was traces of blood and stains of feaces on the mattress and floor, including other inmates used tissue in the floor corners. Tiny nats were also seen in this cell. RN Doe and OMH Doe was aware of the conditions in this cell since I complained to them. Only a x-ray would have discharged me immediately.

12. After four days of being exposed to these conditions, I was released on July 18th, 2024, and sent to the SHU.

13. On or about July 20th, 2024, I was served with a Tier-3 misbehavior report for, amongst other things, assault on staff. After doing four days in the contraband watch cell, I then did an additional 45 days in SHU after being found guilty of the offenses. At no time during this hearing was I afforded any rights. This unlawful proceeding was conducted by the Senior Offender

Rehabilitation Coordinator, c. Wenderly (s.o.R.c. Wenderly), whom exposed me to SHU sanctions, without due process.

14. Specifically, when served with the misbehavior report. I filled-out the assistant form, requesting to present video evidence, to support my contentions of innocence regarding the assault on staff incident. However. S.O.R.C. Wederly conducted this hearing without advising me of all my rights. All he did was accept my plea, then adjourned for disposition, finding me guilty for the entire incident, denying me due process.

15. I also experienced pain and suffering tenderness, superficial abrasions, irritation, including humiliation and psychological effects from the assault and battery. I also experienced internal problems from being exposed to conditions in the strip room. such as, being diagnosed with acute diarrhea, dehydrated and loss of sleep.

16. On or about July 24th, 2024, I also experienced being denied food. Correction Officer, John Doe, (Officer Doe), during the lunch meal, Officer Doe intentionally, without cause, denied me my lunch meal. This was captured on video and reported to the Office of Special Investigations, within minutes, via phone call.

Officer Doe exposed me to cruel punishment especially when I had no access to food in the SHU.

## Green Haven / Great Meadow Incidents

17. On or about July 30th 2024, I was housed at Green Haven Correctional Facility (Green Haven), for transportation purposes.

18. While at Green Haven, I complained to medical staff and Offender Rehabilitation Coordinator, Jane Doe (ORC Doe), about chronic shoulder and wrists pains, due to being handcuffed from the past injuries throughout the years. I also was experiencing acute diarrhea when leaving the contraband watch cell at Five Points. However, ORC Doe, advised me several times, during cell-side interviews, that she could not assist me. ORC Doe, failed to intervene.

19. I was scheduled to be transported on July 30th 2024, from Green Haven to Upstate Correctional Facility (Upstate). Due to my medical complaints to security, I was rescheduled for transfer. I was eventually escorted to medical, due to my persistent complaints. At the clinic, Registered Nurse, Jane Doe, (RN Doe), advised me that she cannot assist me. RN Doe failed to intervene.

20. On August 7th, 2024, I was again advised that I was scheduled for transfer and again, I complained about my medical issues. After being threatened by a female Corrections Lieutenant, Jane Doe (Lieutenant Doe), on how I had no choice "you're leaving", threatening to use force against me. Lieutenant Doe failed to intervene.

21. I was then handcuffed and placed in a van. Two officers from Green Haven, John Does (John Does), had custody of me for transportation purposes. From Green Haven, I went to Great Meadow Correctional Facility (Great Meadow), via van service. We arrived at Great Meadow at about 5pm. I remained inside the van for rondeveau purposes, waiting for Upstate transportation officers, to change van services. During the transportation, I requested bathroom usage. I was denied.

22. Transit Officers, John Doe (Transit Officers), from Upstate arrived at about 5:30pm, when at least five Great Meadow, John Does (John Does), including Correction Officer, St. John (St. John); and, in the presence of two other Great Meadow, Correction Sergeants, John Does (Sergeant Doe[s]), ambushed the van and attacked me for no reason. I was attacked and sustained numerous blows to my head and face, including my back and sustained a half inch laceration on my head (right ear area). Upon belief, Officer Doe, utilized the back

of his name tag, which contains two sharp long stems, for attachment purposes. I was then dragged off van in a violent way and thats when I seen Sergeant Doe pick-up the name tag when it fell off me. I was forcefully and aggressively placed in the Upstate van. I also had a bowel-movement, diarrhea, on me, due to being attacked. Two other inmates were present and was also being transported to Upstate. This attack was cruel and unusual punishment by St. John and John Does. In addition, Sergeant Does failed to intervene and supervise.

23.  This incident also occurred in the presence of Green Haven and Upstate, Transit John Does, they too failed to intervene.

24.  While in the Upstate van, I felt something wet on my neck and ear area, right side. I asked both inmates if I was bleeding and they advised me that there was blood dripping from head, ear area.

## Upstate Incident

25.  While in the van, I started to kick the van windows yelling for medical attention. One of two officers (Transit Doe[s]), said "cut it out Daum". I immediately complied. Several hours later, at about 8:30 pm. we arrived at the Upstate parking lot and I noticed three Correction Officer, John Does.

(John Doe), approached the van from the parking lot; and, Correction Sergeant, John Doe (Sergeant Doe), approached the van from the Upstate draft room, intake area. Those same three Officer Doe's, removed the other two inmates from the van. Then, the back door opened and one of the three Officer Doe's, started punching me in the back of my head, while the other two Officer Doe's entered the van and attacked me from the van door area. The same Officer Doe from the back door, then reached for my throat and started squeezing my wind-pipe while I layed on my stomach being attacked. One Officer Doe kept punching me on my spine and sides. Officer Doe positioned himself on my buttocks and legs, as he continued his attack. The third Officer Doe was trying to break my right ankle. I said "I can't breathe" in a muffled voice, but Officer Doe that was trying to choke me said "I know, just die already". I was then violently pulled out the van by the weist chain and aggressively held in a standing position by two of them, while the Officer Doe's said you better not say shit, you understand!" At this point, Sergeant Doe realized that I was bleeding since the wound was reaggrivated from the first battery and assault that occurred at Great Meadow. Sergeant Doe then

-10-

looked inside the van, reached in and grabbed a paper towel, spit on it and started wiping blood off my head. apparently he was assessing my injury and attempted to clean blood off my face, and ear. I was then aggressively escorted to the draft room intake area and was continuosly warned by Officer Does, one said "I work in 11-Building you better not say nothing". I nodded my head in fear of my life. This was cruel and unusual punishment by Officer Does; and, Sergeant Doe failed failed to intervene, failed to supervise and attempted to cover-up the attack.

26. When I arrived inside the intake area, I was aggressively escorted into a ~~where~~ (no) room where the same Sergeant Doe and the facility Registered Nurse, M. Powell (RN Powell), asked me standard questions and I refused to answer honestly, out of fear. RN Powell and Sergeant Doe documented answers knowing I had visible injuries. I still had blood smeared on me, bruising and swelling, and I was clearly in distress. RN Powell failed to treat and intervene, by ignoring my visible injuries and participated in the cover-up with Sergeant Doe.

27. I was then aggressively escorted to 11-Building to my cell location. Once I was secured in my cell, a female from the Office of Mental Health, Jane Doe (OMH Doe), approached my cell

gate for the SHU screening process. I immediately showed her dried blood and facial injuries. In response, she covered her eyes and said "I'm not here for that" and walked away. OMH Doe, upon belief, was a social worker, she failed to intervene by not reporting my injuries and failing to obtain medical assistance on my behalf.

28. I started yelling on my cell gate, saying my name, identification and cell location, and recited the incident, seeking medical attention. I also did this since there were video and audio equipment on the gallery where I was housed, attempting to have my statements recorded.

29. A different Corrections Officer came to my cell and I requested medical assistance, showing him my injuries and I explained the incident. Several minutes later, the same officer returned back to my cell with two Nurses, one being, RN Powell and Registered Nurse, Jane Doe (RN Doe). I showed them my injuries and RN Powell explained that I didn't mention injuries when interviewed in the draft room area. I explained in an erratic tone that my injuries and distress were visible, and that I was assaulted by staff. RN Doe offered me ibuprofen, but I continued to seek emergency medical attention. Both Nurses walked

away, denying me treatment.

30. A couple weeks later, I complained about my property being missing. A female officer, who was participating in issuing my property advised me "you have alot of enemies", referring to security officers. A lot of my property was missing that she and other officers controlled. These actions of losing my property was a direct result of me filing the grievance regarding me not receiving no property within 72-hours. I received my property two weeks later. I was in a double-cell with no change of clothes, no legal materials or any religous items.

31. During the above-mentioned events, defendants acted maliciously and with the intent to violate my First, Eighth and Fourteenth Amendments; and such protected rights are guaranteed under our constitution. As a direct result, I was injured as described above.

## DAMAGES

32. As a direct result, I suffered the following injuries:

a) violation of my constitutional rights under the FIRST AMENDMENT, to redress of grievances and be free from retaliatory acts;

b) violation of my constitutional rights under the EIGHTH AMENDMENT, to be free from cruel and unusual punishment;

c) violation of my constitutional rights under the **FOURTEENTH** AMENDMENT, to Due Process of Law, at a disciplinary proceeding;

d) physical pain and suffering;

e) emotional trauma and suffering, including fear. embarassment, humiliation, emotional distress, frustration, extreme inconvienance, fright, horror, grief, shame, depression, humiliation, loss of sleep and increased levels of anxiety.

f) deprivation of liberty and the destruction/loss of my property.

## FIRST CAUSE OF ACTION

33. United States Constitutional First Amendment Prohibition of Retaliatory Acts And The Right to Redress of Grievance.

34. I restate and reaffirm, and incorporate paragraphs 1-16, 30, regarding my First Cause of Action.

35. Defendants acted under color of law and did deprive me of my civil. constitutional and statutory rights. to be free from retaliatory acts and the right to redress of grievance, under the First Amendment. resulting to me being attacked. injured. confined, exposed to unlawful conditions, deprived of food and loss of property. Defendants are liable under 42 U.S.C. $^3$ 1983.

## SECOND CAUSE OF ACTION

36. United States Constitutional Eighth Amendment Prohibition of Cruel And Unusual Punishment.

37. I restate and reaffirm, and incorporate paragraphs 1-31, regarding my Second Cause of Action.

38. Defendants acted under color of law and did deprive me of my civil, constitutional and statutory rights, to be free from cruel and unusual punishment, under the Eighth Amendment, resulting to me being attacked, injured, confined, exposed to unlawful conditions, loss/destroyed property and denied food. Defendants are liable to me under 42 U.S.C. §1983.

39. In addition, defendants should be also liable criminally and should also be charged under state, and federal criminal laws.

## THIRD CAUSE OF ACTION

40. United States Constitutional Fourthteenth Amendment, denied due process of law.

41. I restate and reaffirm, and incorporate paragraphs 1-16, regarding my Third Cause of Action.

42. Defendants acted under color of law and did deprive me of my civil, constitutional and statutory rights, to receive due process of law Fourthteenth Amendment, when defendant subjected me to a Tier-3

disposition, based on false accusations involving assault on staff charges; and denying me my state and federal rights under due process, to present evidence of my innocence. Defendant is liable under 42 U.S.C. § 1983.

43. In addition, defendant should also be liable criminally and should also be charged under state, and federal laws.

**WHEREFORE**, I demand judgment against defendants, jointly and separately as follows:

a) In favor of me in an amount to be determined by a jury for each of my causes of actions;

b) Awarding me punitive damages in the amount to be set by a jury;

c) Granting such other and further relief this Court deems just, fair and proper.

Dated: November 23,rd 2024
Wyoming, New York

Respectfully  11/23/24
Terry Daum
Terry Daum  # 97A1295
Attica Corr. Fac.
Box 149
Attica, NY 14011

## INJUNCTION RELIEF

### 1998 Elmira CF

1. While at Elmira Correctional Facility, on or about October 28, 1998, I was a victim to an excessive use of force, by multiple officers, resulting to serious injury, which included, a failure to intervene by former Superintendent, Floyd Bennett, Jr. (Daum v. Bennett, 99-cv-0373 [summary judgment denied: February 28, 2002]).

### 2001 Wende CF

2. While at Wende Correctional Facility, on June 11, 2001, Correction Officers, E. Mendez, B. Kyle, M. Mann and P. Lippert, utilized unnecessary force, when removing me from the draft bus room pin, by punching me several times in my face and head after I was restrained. I sustained several facial, head and body injuries. However, I was falsely reported that only a body hold was used (see, **Exhibit-A**, "Use-of-Force Report," dated: June 11th, 2001 [hereto attached]).

### 2005 Upstate CF

3. While at Upstate Correctional Facility (**Upstate**), on or about, January 14th, 2005, Correction Officers, G. Gettmann and A. Baker, including other officers, utilized excessive force against me, after removing me from the draft bus violently. During the incident those officers kicked me several times in my body. I was also being punched in my head and face, while I was on the ground helpless. Lieutenant Vann ordered those officers to cease attacking me. I was then lifted off the ground, but continued to assault me, by banging my head into the wall and again

-1-

Lieutenant Vann, in an aggressive voice said "that's enough!" I sustained multiple injuries to my head, face, body and wrists, and ankles. Upon belief, Lieutenant Vann submitted a confidential report involving their wild actions. However, it was only reported that a body-hold was used. After a Tier-3 hearing was held, I was immediately transferred to another Special Housing Unit (S.H.U.), Southport Correctional Facility. Subsequently, that hearing disposition was reversed on appeal, since the hand-held video recordings and the draft room surveillance recordings mysteriously disappeared (see, Exhibit-B, "Use of Force Report," dated: January 14, 2005; see also, "Memorandum," dated: January 16, 2005; and "Appeal," dated: April 15, 2005 [hereto attached]).

4. Upstate is liable pursuant to 42 U.S.C. §1983, in violation of the First and Eighth Amendment of the Constitution. Damages are also sought and exceeds $75,000.00 (see, "STATEMENT OF FACTS," at paragraphs 25-43).

2008 Greene Haven CF

5. While at Greene Haven Correctional Facility (Greene Haven), on or about, December 3rd 2008, unquestionably, an incident occurred involving me and Correction Sergeant, M. Lee; including, Correction Officers, Cox, White and Rabbideau. Due to this incident, aggrevated assault on staff, which was unintelligent and unintentional on my part, I was placed in a sheilded cell (see, Exhibit-C, "Unusual Incident Report," dated: December 3rd 2008 [hereto attached]).

6. Then, two days later, December 5th 2008, in retaliation, Cox claimed that I tried to

grab his baton, resulting to my injury, this was clear retaliation (see, **Exhibit-D**, "Unusual Incident Report," dated: December 5,th 2008 [hereto attached]).

7. Based on memory, in mid-December of 2018, I was still in SHU, being escorted by Correction Officers, Williams, Cruise, John Doe and Sergeant John Doe. During the escort, I was in the tunnel when Sergeant Doe started punching me in my face while Cruise and the other Officer Doe held me. I eventually fell to the floor and was being kicked by Williams and Doe. Due to this attack, I was escorted to the clinic and was evaluated. Upon belief, medical and prison records establish the incident.

8. Greene Haven is also liable pursuant to 42 U.S.C. $1983, for violating my First and Eighth Amendment of the Constitution. Damages are also being sought and exceed $75,000.00 (see, "STATEMENT OF FACTS," at paragraphs 17-24).

## 2011 Attica CF

9. While at Attica Correctional Facility (**Attica**), I was attacked by officers, resulting to serious injury (Daum v. Doe, 13-cv-0088 [summary judgment denied: June 22,nd 2016]).

## 2014 Clinton CF

10. While at Clinton Correctional Facility I was attacked by officers, while in the presense of supervisors, resulting to serious injury (Daum v. Devlin, 15-cv-1083; see also, Daum v. Devlin, 21-0997-pr [remanded]).

11. The Clinton civil suit is still pending.

## 2014 Shawangunk CF

12. While at Shawangunk Correctional Facility, prior to, and on, December 5,[th] 2014, I was advised by several inmates that officers were going to --- line you up --- to mean: set-up. I was warned to be very careful.

13. On December 5,[th] 2014, Correction Officer, Schultz, a female officer, claimed, during the count procedures, I violated a prison rule, when masterbating, under the blanket, resulting to me being sent to the facility SHU. During the disciplinary proceeding, another female officer, Jane Doe, who was present at the exact time of the alleged incident, testified on my behalf, stating the incident never occurred. Although Schultz fabricated the incident, I received four months SHU. The initial Tier-3 hearing disposition appeal was affirmed, but was eventually "administratively reversed" (see, Exhibit-E, "Appeal Decision," dated: October 21,[st] 2015 [hereto attached]).

## 2018 Great Meadow CF

14. While at Great Meadow Correctional Facility (Great Meadow), I experienced multiple levels of harassment, including sexual abuse. For starters, on or about October 1,[st] 2018, I was sexually harassed by Correction Officer, John Doe ( see, Exhibit-F, "PREA Complaint Response," dated: November 2,[nd] 2018; see also, "C.O.R.C. Decision," date filed: October 18,[th] 2018 [hereto attached]).

15. Following that scenario, on or about October 29,[th] 2018, Correction Officer, John Doe, in retaliation for the above mentioned grievance,

trashed my cell during a cell search. Subsequently, on November 5,th 2018, my barbershop job was terminated. This too was retaliatory (see, **Exhibit-G**, "C.O.R.C. Decision," date filed: November 18,th 2018 [hereto attached]).

16. Great Meadow is also liable pursuant to 42. U.S.C. § 1983, in violation of the First and Eighth Amendment Constitution. Damages are also sought and exceed $75,000.00 (see also, "STATEMENT OF FACTS," paragraphs

## 2020-2023  Sullivan CF

17. While at Sullivan Correctional Facility (**Sullivan**), on November 4,th 2020, Correction Officer, Richards, fabricated a medical trip refusal form, claiming I refused when I didn't. I filed a complaint (see, **Exhibit-H**, "C.O.R.C. Decision," date filed: November 6,th

18. During my stay at Sullivan, I was experiencing different levels of retaliation that eventually resulted to me going to the SHU. For statters, a female Corrections Officer, Luiso; who was friends with Corrections Officer, Simpson, fabricated several disciplinary charges, including threats, in an attempt to place me in SHU. However, an honest area supervisor, Corrections Sergeant, John Doe, went on record stating such security threat-incident, never occurred. I was then released from Keeplock status on January 1,st 2021, but was still found guilty at the Tier 2 hearing, by Lieutenant Jordan, for other miscellaneous charges.

19. Then, in August of 2021, Corrections Officer Simpson, who was buddy-buddy with

Luiso; and, Correction Officer, Stauch, was on a path to harassing and threatening me. Multiple grievances were filed (see, **Exhibit - I**, "C.o.R.C. Decision," date filed: August 31,ˢᵗ 2021 [hereto attached]).

20. In another scenario, on or about August 29ᵗʰ 2021, Stauch; and, in retaliation, Simpson logged in the housing unit book, that I was placed on a 72-hour investigation-keeplocked. The following day, the facility Superintendent Keyser, along with Corrections Captain, Barlow, were making rounds in the unit, when they learned that I was unlawfully placed on a 72-hour investigation. Captain Barlow ordered my immediate release from keeplock. I filed the complaint against the officer(s) involved. The Office of Special Investigations (OSI), also investigated the unlawful confinement (see, **Exhibit - J**, "C.o.R.C. Decision," date filed: September 20,ᵗʰ 2021 [hereto attached]).

21. Upon information and belief, as a direct result of Simpson falsifying the 72-hour keep-lock investigation against me, reported in the log-book, he had to complete a three-week course, before returning back to work. Three weeks later, Simpson returned to work; and, within two-days, participated in an unnecessary use of force involving another inmate, which also involved Stauch. After those allegations, Simpson resigned.

22. As part of retaliation, another buddy-buddy, Correction Officer, John Doe, sexually abused me during an intentional credit-card swipe, including groping my genitals. This sole purpose was to humiliate me and it did. This incident occurred on, or about, August 31,ˢᵗ 2021 (see, **Exhibit - K**, "PREA Complaint Decision,"

dated: February 24th, 2022; see also, "C.O.R.C. Decision," date filed: September 20st, 2021 [hereto attached]).

23.  Well over a year later, on January 25th, 2023, Correction Officer, Deddazic, during a cell-frisk and in my absence, claimed that he discovered a rolled-up marijuana cigarette in the window inside my cell. I was charged for violating prison rules. Acting Captain, Jordan, conducted a Tier-3 hearing and found me guilty for drug possession, smuggling and other related low-offense charges. On administrative appeal, the four months SHV sanction was modified (time-served) and dismissed the SHV sanction charges (see, **Exhibit-L**, "Disposition Sheet," dated: February 17th, 2023; see also, "Appeal Decision," dated: April 20th, 2023 [hereto attached]).

24.  All these actions were a direct result of filing grievances and complaints against multiple officers; including and on behalf of Doccs prison staff. Sullivan is also liable pursuant to 42 U.S.C. $^{s}$ 1983, in violation of the First and Eigth Amendment Constitution. Damages exceed $75,000.00

## 2023 Auburn CF

25.  While at Auburn Correctional Facility (**Auburn**), on or about December 10th, 2023, Correction Officer, Nuffer, trashed my cell, destroyed legal and personal property during a cell-search (see, **Exhibit-M**, "Grievance," dated: December 12th, 2023 [hereto attached]).

26.  After filing that grievance, I was attacked by unknown officers on January 3rd, 2024, during a medical emergency response. During this medical emergency, I was

unresponsive and was placed in mechanical restraints. While in route to the medical clinic, on a stretcher, these unknown officers intentionally attacked me, violating my Eigth Amendment rights, resulting to injury.

27. During this medical emergency, I was evaluated by a Doctor, via, tv monitore. According to medical, the Doctor instructed the attending Nurse, to place me over night in the Infirmary for observation. While still unresponsive, I was brought to the facility strip room at medical. My clothes were removed without consent. I was awaken to sustaining blows to my ribs, in pain, I tried to yell "what are you doing?" At some point, I was able to focus my vision and I seen a bald-headed Correction Sergeant, John Doe. At this point of focus, I said "why are you letting them do this to me, I know who you are." They stopped the assault and left (see, **Exhibit-N**, "Superintendent Response," dated: April 12,[th] 2024 [hereto attached]).

28. When I was able to stand-up, I then got the Nurse's attention and I kept moaning and complaining to her about the attack, but she ignored my complaint and injuries, like nothing occurred. I sustained pain to my shoulders and ribs. I was also violated and humiliated when realizing these John Doe's removed my clothing from my body.

29. Auburn is liable pursuant to 42 USC §1983, in violation of the First and Eighth Amendment Constitution. Damages are also sought and exceed $75,000.00

## RELIEF SOUGHT

30. When considering "Injunction Relief," petitioner was sentenced to an enhanced prison term, based on Criminal Procedure Law $ 400.15; and, still is housed within the NYS-DOCCS, regarding an unconstitutional sentence, regardless of old law (**Apprendi v. New Jersey,** 530 U.S. 466, 490 [2000]); and or, new law (**Erlinger v. United States,** 144 S.Ct. 1840 [2024]). At no time did petitioner consent to prior conviction procedures. Nor was consecutive and or, seperate acts established for further enhancement and consecutive prison terms. I already served majority, twenty-nine years, well beyond state law limits as a first time felony offender (see, **Exhibit - O,** "Sentencing Transcripts," [page 6], [hereto attached]; see also, Penal Law 70.25, 70.30).

31. In addition, I'm a known medical inmate with active medical, serious problems. For several years, I've been complaining about medical problems, mostly stemming from systemic physical abuse from DOCCS prison staff. I'm also actively involved with medical complaints against staff here at Attica. I have been experiencing Kidney and other physical pains since the attack at Great Meadow and Upstate. Based on the injuries obtained, described in this civil complaint, my kidney was also injured from being dragged-out the van during the incidents (see, **Exhibit - P,** "Grievance Appeal," dated: November 18,[th] 2024; see also, "Complaint," dated: November 18,[th] 2024 [hereto attached]).

32. Furthermore, I have been experiencing inadequate medical care from the previous years

(see, **Exhibit - Q**, "C.O.R.C. Decisions," dated: August 14, 2019; September 24, 2020; February 11, 2021; May 13, 2021; July 29, 2021; January 13, 2022; see also, "Complaint Response," dated: September 5, 2023 [hereto attached]).

33. I'm seeking extraordinary relief, by seeking to be removed from the NYS-DOCCS prison system and restored my liberty; and or, relocated somewhere other than State prison system, within federal court monitere and control, including access to proper medical care.

34. I also request that this Court, at minimum, conduct an evidentiary hearing so that I may substantiate these truthfull allegations. It's been decades since the first -1998 incident and, throughout the years, I have been injured at the hands of Doccs, including lost and or, damaged documents, material properties within their control.

**WHEREFORE**, I respectfully pray that this Court takes charge and award me relief and or, any kind of relief that would protect my Constitutional rights, being free from retaliation and assault, and any other and further relief this Court deems just, fair and proper.

Dated: January 3rd, 2025
         Wyoming, New York

Sincerely,
Terry Daum 1/3/25
Terry Daum
- petitioner -
Attica CF
Box 149
Attica, NY 14011

-10-

Perregaux
11/23/24

## APPLICATION FOR COUNSEL

1. I am the plaintiff, proceeding pro-se, in this action, pursuant 42 U.S.C. § 1983, which was made under the penalties of perjury.

2. I am incarcerated within the Department of Corrections and Supervision, presently at Attica Correctional Facility.

3. I submit this application, seeking the appointment of counsel, based on the nature of this action.

4. This action, a First and Eighth Amendment violation(s), involving multiple state prisons, including numerous defendants.

5. In addition, the complaint involves Injunction Relief.

6. Upon belief, this action involves a multi-jurisdiction complaint. I filed this action with this Court since the main-events occurred within the Northern District ("Great Meadow" and "Upstate").

7. In any event, based on the nature of

this action, I seek appointed counsel, due to the future complications, regarding discovery and depositions, which would be needed. In addition, future factual disputes on different levels, including exhaustion - legal questions. Appointed counsel will make it convienant for all parties.

8. I made several attempts to obtain counsel:
a) Prisoners Legal Services, 14 Lafayett square, Buffalo, New York;
b) Adam Deming, from Proskauer Rose, LLP, One International Place, Boston, MA (this request involved one of my 8th Amendment issues against Doccs);
c) Najee Hassan, 32 Broadway, suite 1310, New York, NY (a paralegal and law student) (However, they declined but accepted my criminal case pro-bono).

9. I was either denied - silently, or was advised no; and or, resources were limited.

WHEREFORE, I pray that this Court awards me pro bono counsel.

I swear under the penalties of perjury that the above is true and correct.

Dated: November 23, 2024
Wyoming, NY

Respectfully
Terry Daum

Form 2104 (11/93)

Ref. Directives #4944, 4004

**STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES**
**USE OF FORCE REPORT**

There are 8 other reports filed under this Use of Force Log #

| FACILITY Wende | Incident Date: 6-11-01 | Facility Use of Force Log # | 0 1 — 0 3 0 |
|---|---|---|---|
| Incident Location Draft Process | Incident Time: Approx 11:32am | If Unusual Incident, CCC Log # | |

### PART A - REPORT OF INCIDENT

| INMATE INVOLVED    Name | DIN | Cell/Cube Location | Role Code* | *01 Bystander 02 Participant 03 Perpetrator 04 Suspect 05 Victim 06 Witness |
|---|---|---|---|---|
| Daum | 97A1295 | 19-25 | 03 | |

| STAFF INVOLVED    Name | Soc. Security # | Title |
|---|---|---|
| 1. E. Mendez | | Correction Officer |
| 2. B. Kyle | | " |
| 3. M. Mann | | " |
| 4. P. Lippert | | " |

**DESCRIBE EVENTS LEADING UP TO THE APPLICATION OF FORCE**

Inmate Daum was to be transported to another facility. He was in draft process holding pen and refused several direct orders to come out of pen to be shackled and put on draft bus.

| TYPE OF FORCE USED | 02 04 06 | 01 Baton 02 Body Hold | 03 Chemical Agents 04 Mechanical Restraint | 05 Use of Firearms 06 Shield | 99 Other |
|---|---|---|---|---|---|

**DESCRIBE THE ACTUAL FORCE USED**    (If chemical agents are used, indicate who authorized use. If inmate is injured, attach photographs.)

Officer E. Mendez pinned inmate to wall with shield controlled left arm with his left hand + applied handcuffs. Officer Kyle controlled upper body and head - his L hand on head & R hand on L. Shoulder.
Officer Mann controlled Upper body & arm with L hand on R. Shoulder + R hand on R. arm.
Officer Lippert controlled both legs w/both his hands.

REPORTER - Name M. Adami 27/c    Signature M. Adami 27/c    Title Sgt.

Dist: Original - Superintendent    Copy - Guidance unit file(s) of inmate(s) involved

— EXHIBIT - A -

Form 2104 (11/93)

Ref. Directives #4944, 4004

**STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES**
**USE OF FORCE REPORT**

There are _____ other reports filed under this Use of Force Log #

| FACILITY | Upstate | Incident Date: 1/14/05 | Facility Use of Force Log # |
|---|---|---|---|
| Incident Location | Draft Area | Incident Time: 6:05 PM | If Unusual Incident, CCC Log # |

## PART A - REPORT OF INCIDENT

| INMATE INVOLVED Name | DIN | Cell/Cube Location | Role Code* | * 01 Bystander 02 Participant 03 Perpetrator 04 Suspect 05 Victim 06 Witness |
|---|---|---|---|---|
| Daum, T. | 97A1295 | 9 Building Upper Holding Pen | 03 | |

| STAFF INVOLVED Name | | Title |
|---|---|---|
| 1. G. Gettmann | | Correction Officer |
| 2. A. Baker | | Correction Officer |
| 3. | | |
| 4. | | |

**DESCRIBE EVENTS LEADING UP TO THE APPLICATION OF FORCE**

Inmate refused to exit draft bus.

**TYPE OF FORCE USED** `02`

01 Baton
02 Body Hold
03 Chemical Agents
04 Mechanical Restraint
05 Use of Firearms
06 Shield
99 Other

**DESCRIBE THE ACTUAL FORCE USED** (If chemical agents are used, indicate who authorized use. If inmate is injured, attach photographs.)

On the above date, Inmate Daum refused to exit draft bus. I gave Officer Gettmann and Baker an order to remove the inmate from the bus. Officer Gettmann took control of the inmate by placing his right hand on left shoulder and placed his left hand on right shoulder and assisted in carrying the inmate off the bus. Officer Baker assisted in carrying the inmate off the bus by taking control of the inmate's feet using both hands. Once off the bus, the inmate was stood up and Officer Gettmann controlled the inmate by placing his right hand on the inmate's waist chain and his left hand on the inmate's left shoulder. Officer Baker took control of the inmate's waist chain with left hand and took control of the inmate's right shoulder where the inmate was escorted to the B.O.S.S. chair and he didn't pass the chair. The inmate was then strip frisked and there was no contraband found. Officer Gettmann took control of the waist chain with his right hand and his left hand on the inmate's left shoulder. Officer A. Baker took control of the waist chain with his left hand and placed his right hand on the inmate's right shoulder. Officers Gettmann and Baker then escorted inmate Daum to 9 Building under the direction of Sgt. Grimshaw with no further incident.

REPORTER - Name   R. Gill          Signature          Title   Sgt.

Dist: Original - Superintendent    Copy - Guidance unit file(s) of inmate(s) involved — EXHIBIT — B —

New York State Department of Correctional Services
Upstate Correctional Facility

MEMORANDUM

TO: Lt. Martin

FROM: R. Gill, Sgt.

DATE: 1/16/05

SUBJECT: Use of force   05-005   Inmate Daun 97A 1295 , Inmate Rodriquez 04A1438

On the above date I was notified by transportation Officer Juntunun that there three inmates on the bus and two were refusing to exit the bus . Inmate Preister was shackled to inmate Rodriquez ████████████████████████████████████████ . The other two inmates were given direct orders to exit the bus they both refused at this point.

The Watchcommander was notified at 6:05 PM at 6:10 PM Lt. Vann arrived in the draft area and on the draft bus and gave inmate Rodriquez ████████and Daun 97A1295 both orders to exit the bus both inmates refused .

An extraction Team was set up ████████████████████████████████████████████████████████████████████████████████████████████████████████████

At appox 6:45 PM Inmate Daun was given a direct order to exit the bus , the inmate refused all staff direction making it nessarry to carry the inmate from the bus. Inmate Daun was removed from the bus by Officers Gettmann and A Baker Inmate Daun was taken to the strip frisk area and placed in the Boss chair and failed to pass it a strip frisk was conducted and no contraband was found . The watch commander was notified and placed on a special watch in 9 bldg. upper holding. The inmate was escorted from the draft area to 9 bldg. by Officers Gettman and A. Baker under the direction of Sgt. . Grimshaw with no further incident.

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Both inmates were seen by medical in the draft area , ████████████████████ .Inmate Daun was seen by medical and he complained of injuries to his arm and ankle.

Photos were taken of both inmates by Officer Lavigne. ████████████████████████████████████████

the Extraction of inmate Daun was video taped by Officer Green.

_Sgt. Gill_

— EXHIBIT - B —

STATE OF NEW YORK
DEPARTMENT OF CORRECTIONAL SERVICES
THE HARRIMAN STATE CAMPUS
ALBANY, N.Y. 12226

GLENN S. GOORD
COMMISSIONER

LUCIEN J. LECLAIRE, JR.
DEPUTY COMMISSIONER
CORRECTIONAL FACILITIES

REVIEW OF SUPERINTENDENT'S HEARING

NAME:   DAUM, TERENCE                           NO.   97A1295

HEARING FACILITY:   UPSTATE

ON BEHALF OF THE COMMISSIONER AND IN RESPONSE TO YOUR RECENT

LETTER OF APPEAL, PLEASE BE ADVISED THAT YOUR SUPERINTENDENT'S HEARING OF

JANUARY 26, 2005,   HAS BEEN REVIEWED AND **REVERSED** ON **APRIL 15, 2005.**

DONALD SELSKY
DIRECTOR, SPECIAL HOUSING/
INMATE DISCIPLINARY PROGRAM

CC: FACILITY SUPERINTENDENT
CENTRAL OFFICE FILES

APPEAL DECISION RENDERED PURSUANT TO SECTION 254.8 OF CHAPTER V AND
ELECTRONICALLY PRODUCED UPON THE AUTHORITY OF THE DIRECTOR OF SPECIAL
HOUSING/INMATE DISCIPLINE PROGRAM.

- EXHIBIT - B -

```
PAGE   1                          STATE OF NEW YORK              PRINTED AT
                            DEPARTMENT OF CORRECTIONAL SERVICES   12/09/08  10:41 AM
                                   UNUSUAL INCIDENT REPORT
```

GREEN HAVEN GENERAL          FAC CODE███████ FAC LOG#███████   CCC███████

INCIDENT DATE   12/03/08  TIME 08:15 PM  LOCATION  SHU-DISCIPLN SH UU 015

TELEPHONE DATE  12/04/08  TIME 12:54 AM

        PERSON CALLING      LT    TOKARZ
        PERSON RECEIVING    CAPT  ████BELL

REPORT DATE     12/09/08     PERSON REPORTING LT   R. WARD

        USE OF FORCE  NO                    WEAPON USED  YES

********************************************************************************

ASSAULT                   (02) 03
ON STAFF - SECURITY

********************************************************************************

DESCRIPTION:

ON DECEMBER 3, 2008 AT APPROXIMATELY 8:15 PM SERGEANT LEE HAD RESPONDED
TO 2 COMPANY TO SPEAK TO INMATE DAUM (97A1295) SHU 15 CELL. SERGEANT LEE
WAS ACCOMPANIED BY OFFICER COX, OFFICER  RABIDEAU, AND OFFICER WHITE. WHEN
THE SERGEANT AND ALL THREE OFFICERS WERE IN FRONT OF THE 1ST TANK ON
COMPANY INMATE DAUM PROPELLED AN UNKNOWN LIQUID FROM WITHIN HIS CELL (FROM
INSIDE HIS WATER BUCKET) STRIKING THE SERGEANT AND THE THREE OFFICERS.
OFFICER WHITE WAS STRUCK ON THE FRONT OF THIS BODY AND FACE. OFFICER
COX WAS STRUCK ON THE RIGHT SIDE OF THE CHEST AND DOWN THE RIGHT SIDE OF
HIS BODY. OFFICER RABIDEAU WAS STRUCK ON THE FRONT OF HER BODY AND FACE.
SERGEANT LEE WAS STRUCK.

********************************************************************************

EVENTS CAUSING:

SERGEANT LEE ALONG WITH OFFICERS' COX, WHITE, AND RABIDEAU RESONDED TO
INMATE DAUMS CELL, AND INMATE INMATE PROPELLED AND UNKNOWN LIQUID AT THE
STAFF.

********************************************************************************

- EXHIBIT-C -

STATE OF NEW YORK
DEPARTMENT OF CORRECTIONAL SERVICES
UNUSUAL INCIDENT REPORT

PRINTED AT
12/09/08  10:41 AM

GREEN HAVEN GENERAL           FAC CODE 080     FAC LOG# 080151     CCC# 207224

INCIDENT DATE    12/03/08  TIME 08:15 PM  LOCATION  SHU-DISCIPLN SH UU 015

               USE OF FORCE   NO               WEAPON USED   YES

**********************************************************************************

ACTION TAKEN:
SERGEANT LEE, AND OFFICERS WHITE, COX, AND RABIDEAU WERE EXAMINED IN THE
FACILITY CLINIC AFTER SHOWERING. ALL WERE UNINJURED AND THEIR EXPOSURE
WAS DETERMINED TO BE INSIGNIFICANT BY FACILITY MEDICAL STAFF. ALL WERE
SPOKEN TO BY FACILITY BERT TEAM MEMBER OFFICER M. MILLER. ALL REMAINED ON
DUTY. INMATE DAUM WAS MOVED FROM SHU 15 AND PLACED IN SHU 34 BEHIND
PLEXIGLASS SHIELD. DEPRIVATION ORDER AUTHORIZED BY O.D. CAPTAIN BURNETT.
EVIDENCE WAS COLLECTED IN ACCORDANCE WITH DIRECTIVE 4931, AGGRAVATED
HARASSMENT OF AN EMPLOYEE BY AN INMATE. O.D. CAPTAIN BURNETT AND D.S.S.
KOSKOWSKI NOTIFIED.
EVIDENCE WAS UNABLE TO BE SENT OUT FOR TESTING DUE TO CONTAMINATION DURING
THE COLECTION PROCESS.

**********************************************************************************

MEDICAL REPORT:

SERGEANT LEE, AND OFFICERS RABIDEAU, COX, AND WHITE HAVE 0 INJURIES, ALL
DENY SUBSTANCE IN EYES OR MOUTH, AND 0 OPEN AREAS.

    L. CAREY                    /NURSE                  12/03/08  10:00 PM
                    EXAMINER NAME/TITLE                     EXAM DATE/TIME

**********************************************************************************

PROPERTY DAMAGE:

**********************************************************************************

- EXHIBIT - C -

(11)

```
PAGE   1                    STATE OF NEW YORK              PRINTED AT
                   DEPARTMENT OF CORRECTIONAL SERVICES   12/09/08  10:16 AM
                          UNUSUAL INCIDENT REPORT
```

GREEN HAVEN GENERAL          FAC CODE▓▓▓      FAC LOG#▓▓▓▓▓    CCC#▓▓▓▓▓▓

                             UF LOG#▓▓▓▓▓▓▓

INCIDENT DATE   12/05/08  TIME 09:38 PM  LOCATION  SHU-DISCIPLN SH UU 013

TELEPHONE DATE  12/06/08  TIME 12:55 AM

        PERSON CALLING     LT   TOKARZ
        PERSON RECEIVING   CAPT ▓▓▓▓ SIGNOR

REPORT DATE      12/09/08     PERSON REPORTING LT    R. WARD

             USE OF FORCE  YES              WEAPON USED  NO

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

  DISRUPTIVE BEHAVIOR      (05) 01        STAFF USE OF WEAPONS    (20) 05
  REFUSED INSTRUCTION                       BATON

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DESCRIPTION:

AFTER RECEIVING LAW LIBRARY BOOKS, INMATE DAUM (97A1295) SHU-13, WHO HAD
A CELL SHIELD DEPRIVATION ORDER, REFUSED TO ALLOW HIS CELL HATCH TO BE
CLOSED BY STUFFING IT WITH CLOTHING. OFFICER COX WAS DIRECTED TO CLEAR THE
CLOTHING AND CLOSE THE HATCH BY LIEUTENANT TOKARZ. WHILE CLEARING THE ITEMS
WITH HIS BATON, INMATE DAUM REACHED THROUGH THE HATCH AND ATTEMPTED TO GRAB
THE OFFICERS BATON. OFFICER COX, WHO WAS HOLDING HIS BATON WITH TWO HANDS,
JABBED INMATE DAUM STRIKING HIM IN THE LEFT ELBOW WITH HIS BATON. OFFICER
THEN EXITED THE CELL AREA AND NOTIFIED HIS AREA SUPERVISOR, SERGEANT
EDERER.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

EVENTS CAUSING:

AFTER RECEIVING LAW LIBRARY BOOKS, INMATE DAUM REFUSED TO CLOSE HIS CELL
HATCH.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

— EXHIBIT-D —

PAGE   2                          STATE OF NEW YORK              PRINTED AT
                         DEPARTMENT OF CORRECTIONAL SERVICES    12/09/08  10:16 AM
                              UNUSUAL INCIDENT REPORT


GREEN HAVEN GENERAL           FAC CODE ████      FAC LOG# █████    CCC# █████████

                          UF LOG# █████████

INCIDENT DATE    12/05/08  TIME 09:38 PM  LOCATION  SHU-DISCIPLN SH UU 013

               USE OF FORCE  YES                  WEAPON USED  NO

**************************************************************************

ACTION TAKEN:
 INMATE WAS REMOVED FROM CELL. HATCH WAS CLEARED AND SECURED. INMATE SEEN BY
 MEDICAL STAFF. AN AREA OF REDNESS WAS NOTED ON THE INMATES LEFT ELBOW. 35MM
 AND DIGITAL UOF PHOTOS TAKEN OF INMATE DAUM. ████████████████████████

 ████████████████████████████ INMATE DAUM WAS RETURNED TO HIS ASSIGNED CELL.
 ALL PERTINENT REPORTS WERE FILED. O.D.D.S.P. CUNNINGHAM WAS NOTIFIED. A
 COPY OF THE UNIT VIDEO WAS SECURED IN THE CAPTAINS OFFICE.


**************************************************************************

MEDICAL REPORT:

 NMATE: SLIGHT REDNESS / DISCOMFORT TO LEFT ELBOW, NO BRUISING.
 INMATE STATES THAT THERE ARE NO FURTHER INJURIES AT THIS TIME.
 ████████████████████████████████████████████████████████


   M. FESCOE              /NURSE                    12/05/08  09:45 PM
                    EXAMINER NAME/TITLE                EXAM DATE/TIME


**************************************************************************

PROPERTY DAMAGE:



**************************************************************************

NOTIFICATION (FAMILY):




                   -EXHIBIT-D-

— EXHIBIT-E —

NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
THE HARRIMAN STATE CAMPUS - BUILDING 2
1220 WASHINGTON AVENUE
ALBANY, N.Y. 12226-2050

ANTHONY J. ANNUCCI
ACTING COMMISSIONER

JOSEPH BELLNIER,
DEPUTY COMMISSIONER
CORRECTIONAL FACILITIES

REVIEW OF SUPERINTENDENT'S HEARING

NAME: DAUM, TERENCE          NO. 97A1295

HEARING FACILITY: SHAWANGUNK

ON BEHALF OF THE COMMISSIONER, PLEASE BE ADVISED THAT YOUR

SUPERINTENDENT'S HEARING OF  DECEMBER 17, 2014,  HAS BEEN REVIEWED AND

ADMINISTRATIVELY REVERSED ON OCTOBER 21, 2015.

D. VENETTOZZI
DIRECTOR, SPECIAL HOUSING/
INMATE DISCIPLINARY PROGRAM

CC: FACILITY SUPERINTENDENT
CENTRAL OFFICE FILES

APPEAL DECISION RENDERED PURSUANT TO SECTION 254.8 OF CHAPTER V AND
ELECTRONICALLY PRODUCED UPON THE AUTHORITY OF THE DIRECTOR OF SPECIAL
HOUSING/INMATE DISCIPLINE PROGRAM.

A4.15



**NEW YORK STATE** | **Corrections and Community Supervision**

**ANDREW M. CUOMO**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

**To:**    T. Daum 97A1295 (E-6-12)

**From:**  A. Torres, Assistant Deputy Superintendent for PREA

**Date:**  November 2, 2018

**Re:**    PREA Complaint

---

This is in response to your letters dated 10/1/18 and 11/1/18 regarding your concern over an incident you claimed took place on October 1, 2018 in the barbershop at Great Meadow Correctional Facility. After review, it has been determined that your allegation does not rise to the level of PREA at this time. Please be advised that your concerns have been forwarded to security personnel for review and appropriate action.

CC: Guidance File

— EXHIBIT-F —

| NEW YORK STATE | Corrections and Community Supervision | Grievance Number<br>GM-63734-18 | Desig./Code<br>I/44 | Date Filed<br>10/18/18 |
|---|---|---|---|---|
| ANDREW M. CUOMO<br>Governor | ANTHONY J. ANNUCCI<br>Acting Commissioner | Associated Cases | | Hearing Date<br>01/08/20 |
| | | Facility<br>Great Meadow Correctional Facility | | |
| INMATE GRIEVANCE PROGRAM<br>CENTRAL OFFICE REVIEW COMMITTEE | | Title of Grievance<br>Grievance Process | | |

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby accepted in part only to the extent that CORC upholds the determination of the Superintendent for the reasons stated.

CORC notes that complaints received are processed in accordance with Directive #4040, and that then Acting IGP Supervisor T... denies providing false information to Assistant IGP Director S.... CORC also notes that the grievant's allegation of sexual misconduct was appropriately reviewed and investigated.. CORC has not been presented with sufficient evidence to substantiate malfeasance by staff.

CORC asserts that the grievance program is not intended to support an adversary process.

With respect to the grievant's appeal, CORC notes that he has since been transferred and advises him to address grievance concerns to the IGP Supervisor where the grievance was filed.

MPS/
------------------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------------------

– EXHIBIT–F–

This document has been electronically signed by Shelley M. Mallozzi



| NEW YORK STATE Corrections and Community Supervision | Grievance Number GM-63807-18 | Desig./Code I/25 | Date Filed 11/08/18 |
|---|---|---|---|
| | Associated Cases | | Hearing Date 02/26/20 |
| ANDREW M. CUOMO Governor    ANTHONY J. ANNUCCI Acting Commissioner | Facility Great Meadow Correctional Facility | | |
| INMATE GRIEVANCE PROGRAM CENTRAL OFFICE REVIEW COMMITTEE | Title of Grievance Cell Frisk | | |

## GRIEVANT'S REQUEST UNANIMOUSLY DENIED

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby denied. CORC upholds the determination of the Superintendent for the reasons stated.

CORC notes that the grievant's cell was searched on 10/29/18 and the contraband receipt indicates that no contraband was found and no damage was done to his property. He was subsequently removed from the Barber Shop Program effective 11/5/18 for legitimate security concerns, and CORC asserts that he is not due any back pay. Further, CO C... denies scattering the grievant's property and states that he conducts cell searches in accordance with Directive #4910. It is noted that CO D... is no longer employed by DOCCS, therefore, was unavailable to address the grievant's allegations. IGP Supervisor M... states that there is no record of the grievant filing a complaint regarding Sgt. H... as alleged. CORC reminds the grievant that searches are a necessary part of correctional security activity and are designed to promote the safety of all concerned by interception of contraband and by deterring inmates from possessing contraband. In addition, there is no requirement in Directive #4910 for an inmate to be present during a cell search.

CORC notes that Directive #4040, § 701.1, states, in part, that the grievance program is not intended to support an adversary process.

CORC continues to uphold the discretion of facility administrations to make top level decisions, when necessary, for the safety, security and good order of their facilities with regards to the appropriateness of or removal from a particular program assignment for a particular inmate. The administration must make a judgment call based on experience and available information to prevent possible difficulties. CORC believes that this is sound operating procedure in order for the Program Committee to function effectively in the correctional setting.

With regard to the grievant's appeal, CORC has not been presented with sufficient evidence of retaliation or malfeasance by staff and notes that he has since been transferred. He is advised to address block issues with supervisory staff and programming concerns with his assigned ORC.

TAB/

----------------------------------------------------------------------

----------------------------------------------------------------------

## — EXHIBIT - G -

This document has been electronically signed by Shelley M. Mallozzi

| NEW YORK STATE | Corrections and Community Supervision | Grievance Number SUL-0762-20 | | Desig./Code I/23 | Date Filed 11/06/20 |
|---|---|---|---|---|---|
| ANDREW M. CUOMO Governor | ANTHONY J. ANNUCCI Acting Commissioner | Associated Cases | | | Hearing Date 05/20/21 |
| | | Facility Sullivan Correctional Facility | | | |
| INMATE GRIEVANCE PROGRAM CENTRAL OFFICE REVIEW COMMITTEE | | Title of Grievance Officer Denied Medical Trip | | | |

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby accepted in part.

CORC notes that the grievant allegedly refused a medical trip on 11/4/20, and that security staff inappropriately completed Form #3195 - Refusal of Medical Examination and/or Treatment. CORC further notes that when an incarcerated individual refuses a medical trip, examination or treatment, and refuses to sign Form #3195 the signature of a second witness is required and the signature of the third witness is a medical staff person who informs the incarcerated individual of the consequences for refusing the trip, examination or treatment. CORC also notes that refusals must occur in the Health Unit in accordance with HSPM #7.18. CORC notes that the facility administration has taken corrective action with appropriate staff to ensure compliance with HSPM #7.18.

With respect to the grievant's appeal, CORC asserts that his concerns have been addressed and finds no malice by staff.

MPS/

-------------------------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------------------------

- EXHIBIT - H -

This document has been electronically signed by Shelley M. Mallozzi

| NEW YORK STATE Corrections and Community Supervision | Grievance Number SUL-0400-21 | Desig./Code I/49 | Date Filed 08/31/21 |
|---|---|---|---|
| | Associated Cases | | Hearing Date 11/04/21 |
| KATHY HOCHUL Governor    ANTHONY J. ANNUCCI Acting Commissioner | Facility Sullivan Correctional Facility | | |
| INCARCERATED GRIEVANCE PROGRAM CENTRAL OFFICE REVIEW COMMITTEE | Title of Grievance Harassed By CO | | |

## GRIEVANT'S REQUEST UNANIMOUSLY DENIED

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby denied. CORC upholds the determination of the Superintendent for the reasons stated.

CORC notes that CO S... denies verbally harassing, threatening or keeplocking the grievant for no reason. In addition, CO S... states that they wear their mask when on duty. CORC advises the grievant to address future safety or security concerns to an area supervisor at the time of incident for any remedial action deemed necessary and has not been presented with sufficient evidence of malfeasance by staff.

CORC asserts that the grievance program is not intended to support an adversary process.

With regard to the grievant's appeal, CORC notes that the investigation was conducted in accordance with Directive #4040 and asserts that all relevant information must be presented at the time of filing in order for a proper investigation to be conducted at the facility level.

HLK/

------------------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------------------

- EXHIBIT - I -

This document has been electronically signed by Shelley M. Mallozzi

DS-112

Daum 97A1295

| NEW YORK STATE Corrections and Community Supervision | Grievance Number<br>SUL-0421-21 | Desig./Code<br>I/49 | Date Filed<br>09/20/21 |
|---|---|---|---|
| | Associated Cases | | Hearing Date<br>02/03/22 |
| KATHY HOCHUL    ANTHONY J. ANNUCCI<br>Governor    Acting Commissioner | Facility<br>Sullivan Correctional Facility | | |
| INCARCERATED GRIEVANCE PROGRAM<br>CENTRAL OFFICE REVIEW COMMITTEE | Title of Grievance<br>Retaliation For Filing Grievances/Placed On 72-Hour Observation | | |

## GRIEVANT'S REQUEST UNANIMOUSLY DENIED

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby denied. CORC upholds the determination of the Superintendent for the reasons stated.

CORC notes that Lt. J... and CO S... deny retaliating against the grievant, and that CO S... denies making derogatory remarks. It is noted that Sgt D... reported to the grievant's housing unit on 8/29/21 after being notified by CO S... that the grievant was observed with a pencil in their hand and making comments that other incarcerated individuals were out to get them. Sgt D... states that the grievant refused protective custody, was placed on a 72-hour confinement hold for their safety pending an investigation, and was subsequently released after no credible threat to the grievant's safety was found. CORC asserts that the grievance program is not intended to support an adversary process, and finds insufficient evidence to substantiate malfeasance by staff.

With respect to the grievant's appeal, CORC asserts that all relevant information must be presented at the time of filing in order for a proper investigation to be conducted at the facility level and advises the grievant to address further security concerns to area supervisory staff for remedial action, if warranted.

MXV/ras

---

---

$- EXHIBIT - J -$

This document has been electronically signed by Rachael A. Seguin

DS-112

Dawn 97A1295



NEW YORK STATE | **Corrections and Community Supervision**

**KATHY HOCHUL**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

## Notification to Complainant of Closure of Investigation

**TO:**   Superintendent Keyser
   **For Incarcerated Individual's Include DIN:** Daum 97A1295; **Facility:**Sullivan CF .

**FROM:**   **Asst. Deputy Chief Inv.**M. Ball ; **Inv.** K. Horton

**DATE:**   2/24/2022

**RE: OSI CASE#** SCU 21 0587

---

Based upon your complaint made on or about 8/31/2021, the Office of Special Investigations (OSI) conducted an investigation which is identified by the above OSI case number.

Please be advised that as a result of the investigation, the OSI made the following finding: The allegation was found to be UNSUBSTANTIATED and has been closed. This finding is based upon the evidence of the case.

If you have any questions, you may contact the above OSI member(s). Thank you for bringing this allegation to the attention of the Office of Special Investigations.

$$- EXHIBIT - K -$$

cc: Case File

| NEW YORK STATE Corrections and Community Supervision | Grievance Number **SUL-0419-21** | Desig./Code I/49 | Date Filed 09/20/21 |
|---|---|---|---|
| | Associated Cases | | Hearing Date 01/06/22 |
| KATHY HOCHUL  Governor      ANTHONY J. ANNUCCI  Acting Commissioner | Facility Sullivan Correctional Facility | | |
| **INCARCERATED GRIEVANCE PROGRAM**  **CENTRAL OFFICE REVIEW COMMITTEE** | Title of Grievance Harassment/Threats/Retaliation By CO | | |

## GRIEVANT'S REQUEST UNANIMOUSLY DENIED

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby denied.

CORC notes that CO F... denies threatening or retaliating against the grievant for prior complaints or being aggressive while pat frisking the grievant on 8/29/21. In addition, Sgt. W... denies witnessing same and states that the grievant did not voice any concerns regarding the pat frisk. It is noted that SUL-0400-21 was answered by CORC on 11/4/21. CORC has not been presented with sufficient evidence to substantiate malfeasance by staff and advises the grievant to address future security concerns to an area supervisor at the time of incident, for any remedial action deemed necessary.

CORC notes that the grievance program is not intended to support an adversary process and that no reprisals of any kind shall be taken against an incarcerated individual or employee for good faith utilization of this grievance procedure. An incarcerated individual may pursue a complaint that a reprisal occurred through the grievance mechanism.

With respect to the grievant's appeal, CORC notes Capt. L... reviewed the video from the Cross Gates area on 8/29/21 from 11:00 AM - 12:00 PM, and states that it did not show any pat frisk of any incarcerated individual during the date and time alleged by the grievant. In addition, Lt. D... states they interviewed the grievant on 10/1/21, and the grievant had no witnesses.

MPS/

---------------------------------------------------------------------------------------------------------------------------

---------------------------------------------------------------------------------------------------------------------------

*- EXHIBIT - K -*

This document has been electronically signed by Shelley M. Mallozzi

DS-112

DAUM 97A 1295    2

```
07/15/2024               NYS DEPT OF CORRECTIONS & COMMUNITY SUPERVISION            PAGE    1
DCP004                       SUPERINTENDENT  HEARING DISPOSITION RENDERED
```

              FIVE POINTS                          TAPE NUMBER  # 81

DIN: 97A1295 NAME: DAUM, TERENCE                       LOCATION: FIVE PT RMH

INCIDENT DATE & TIME:         07/15/2024    12:30 PM    TIER 3

REVIEW DATE:                  07/15/2024       BY:  LT  TUCCILLO, T R

DELIVERY DATE & TIME:    07/20/2024 10:27 Am BY:  C.O.  B. Johns

HEARING START DATE & TIME:  7/23/24  2:57 pm BY:  SOnC  S. Wlendl, C

HEARING END DATE & TIME:    7/23/24  3:06 pm BY:  SOnC  S. Wlendl, C
WAS THERE NEED FOR A FORMAL MENTAL HEALTH/INTELLECTUAL CAPACITY ASSESSMENT? Y / N
DOES THIS MISCONDUCT MEET THE CRITERIA FOR WORKPLACE VIOLENCE?  Y / N
CHARGE
NUMBER       DESCRIPTION OF CHARGES            REPORTED BY         DISPOSITION

| CHARGE NUMBER | DESCRIPTION OF CHARGES | REPORTED BY | DISPOSITION |
|---|---|---|---|
| 104.11 | VIOLENT CONDUCT | SGT  HUBBARD, P A | G |
| 104.13 | CREATING A DISTURBANCE | | G |
| 100.11 | ASSAULT ON STAFF | | G |
| 107.10 | INTERFERENCE WITH EMPLOYEE | | G |
| 107.11 | HARASSMENT | | G |
| 106.10 | REFUSING DIRECT ORDER | | G |

ANY GUILTY DISPOSITION WILL RESULT IN A MANDATORY DISCIPLINARY SURCHARGE IN THE
AMOUNT OF FIVE($5.00) DOLLARS BEING ASSESSED AUTOMATICALLY AGAINST THE I/I.
SANCTION DATES BELOW ARE SUBJECT TO REVIEW/CHANGE, AND WILL BE CONSECUTIVELY ADDED TO
ANY SIMILAR CURRENT SANCTION.

| PENALTY CODE | DESCRIPTION | PENALTY MO DAYS | START DATE | RELEASE DATE | SUSPEND MO DAYS | DEFERRED MO DAYS | RESTITUTION $$$$ . ¢¢ |
|---|---|---|---|---|---|---|---|
| A400 | Re SH) | SD | 7/18/24 | 7/23/24 | | | |
| A000 | SH) | 40D | 7/23/24 | 9/1/24 | | | |
| D000 | Rec | 45D | 7/23/24 | 9/6/24 | | | |
| G000 | Phne | 45D | 7/23/24 | 9/6/24 | | | |

_ EXHIBIT - L -

NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
THE HARRIMAN STATE CAMPUS - BUILDING 2
1220 WASHINGTON AVENUE
ALBANY, N.Y.  12226-2050


REVIEW OF SUPERINTENDENT'S HEARING

NAME:  DAUM, TERENCE                     NO.  97A1295

HEARING FACILITY:  SULLIVAN


ON BEHALF OF THE COMMISSIONER AND IN RESPONSE TO YOUR RECENT
LETTER OF APPEAL, PLEASE BE ADVISED THAT YOUR SUPERINTENDENT'S HEARING OF
FEBRUARY 17, 2023,  HAS BEEN REVIEWED AND MODIFIED ON APRIL 20, 2023.
DISMISS CHARGE(S): 113.33, 114.10.

PENALTIES:
63 DAYS SPECIAL HOUSING UNIT
90 DAYS LOSS OF PACKAGES
90 DAYS LOSS OF COMMISSARY
90 DAYS LOSS OF PHONE


<u>A. RODRIGUEZ</u>
DIRECTOR, SPECIAL HOUSING/
INMATE DISCIPLINARY PROGRAM


CC: FACILITY SUPERINTENDENT
    CENTRAL OFFICE FILES


APPEAL DECISION RENDERED PURSUANT TO SECTION 254.8 OF CHAPTER V AND
ELECTRONICALLY PRODUCED UPON THE AUTHORITY OF THE DIRECTOR OF SPECIAL
HOUSING/INMATE DISCIPLINE PROGRAM.


- EXHIBIT-L-

To: Superintendent
From: Terry Daum # 97A1295, E-7-5
Date: December 12, 2023
Re: Complaint

— EXHIBIT — M —

Dear Superintendent,

I'm submitting this complaint directly to you for multiple reasons: I'm requesting to see O.S.I.; this complaint involves criminal offenses and civil rights violations; the grievance supervisor advised me today (during her rounds) to submit only a claim; this facility grievance process is useless.

This complaint involves a use-of-unneccessary force; destruction of personal property; stolen property; retaliation; and the failure to intervene, at the hands of security staff.

On December 10, 2023, at about 9:20 am, officers came to the unit, responding to a medical emergency, when I was aggressively mechanically restrained and escorted to the medical unit for no apparent reason. The medical staff checked me and advised security that I was clear to return back to the housing unit. I was returned to the unit, placed in the first cell (slop sink cell), remained in handcuffs, for, overall, an hour, while C.O. Nuffer was searching my cell, and prior to that. During the initial procedure of the use-of-unneccessary-force, when being escorted, I don't know which one, but behind my back,

—1—

made reference to me being a "snitch" and a "sexual harassment" lawsuit, referring to complaints. When I was returned to my cell, I immediately noticed it was trashed, one of my shoes was in the toilet. I immediately asked for the area supervisor. I told C.O. Tortello, C.O. Nuffer and any officer that walked past my cell. I was ignored. When fixing my cell, I noticed honey and body-wash had already spilled on some legal documents. C.O. Nuffer stole 4 packs of Newports, 10 stamps, seasonings, two brand new Ralph Lauren V-Kneck t-shirts and two brand new Calvin Klien T-shirts. I was also missing a beige V-kneck nitted Ralph Lauren sweater, a mirror, toenail clipper, a tweezer and a bowl. From the slop-sink, I observed C.O. Nuffer place my hot-pot on the table (in front of my cell), where my banquet chicken, also chicken wings, one vel pepper, two tomatoes, one brand new box of butter and six Pepsi sodas were at (on the table). After the search, C.O. Nuffer walked off the company with my hot-pot. C.O. Tortello, instructed another porter from 4-company to throw the food in the garbage. The video recording will establish this unlawful conduct. Since no supervisor wanted to communicate with me, I then spoke to the supervisor on the 3-11 shift.

-2-        — Ex - M -

..... wanted to throw the food in the garbage. The video recording will establish this unlawful conduct. Since no supervisor wanted to communicate with me, I then spoke to the supervisor on the 3-11 shift.

On December 12 (today), I complained to the M.H.U. Deputy, in the presence of the P.R.E.A. Deputy. I also spoke to the grievance supervisor and she instructed me to submit only a claim.

I'm requesting to file a complaint with O.S.I because I also wish to file criminal charges. Not only was I a victim at the hands of security staff, but C.O. Nuffer also committed fraud by ~~falsy~~ falsifying a search-slip

Thank you for time and action involving your staff. Also, C.O. Nuffer destroyed legal documents by ripping opposition briefs in half.

Respectfully,

~~Terrey Baen~~

12-12-23

cc.

File
Family

Ex - M



| NEW YORK STATE **Corrections and Community Supervision** | GRIEVANCE NO. AUB - 0162-24 | | DATE FILED 1/30/2024 |
|---|---|---|---|
| | FACILITY **AUBURN** | | POLICY DESIGNATION **I** |
| INCARCERATED GRIEVANCE PROGRAM | TITLE OF GRIEVANCE ASSAULTED BY RESPONSE TEAM | | CASE CODE **49.0** |
| **SUPERINTENDENT RESPONSE** | SUPERINTENDENT'S SIGNATURE *T. Nagl Alsip.* | | DATE **4/12/2024** |
| GRIEVANT **Daum T.** | DIN **97-A-1295** | HOUSING UNIT **E-07-05** | |

This grievance was investigated by Lt. Longyear. When interviewed, the grievant reiterated his complaint, and was unable to provide any staff names or offer any witnesses to the alleged incident. On 1/3/24, at approximately 9:00 p.m., a medical emergency for grievant was noted in the unit logbook. Grievant was admitted to the infirmary for observation, and released the following morning. On 1/5/24, grievant made a complaint to OSI alleging a dislocated left shoulder and injured left hand. Grievant was taken to medical for examination, where an x-ray was obtained and was negative for a fracture/dislocation. Based on this investigation, grievant's allegations are unsubstantiated, and, therefore, this grievance is denied.

- EXHIBIT -      N -

---

**APPEAL STATEMENT**

If you wish to appeal the above decision of the Superintendent, please sign below and return this copy to the IGRC at the facility where the grievance was filed. You have seven (7) calendar days from receipt of this notice to file your appeal.* Please provide a reason why you are appealing this decision to CORC..  *I explained to Lt. Longyear that I did have witnesses, the entire unit and the video monitor-recording equipment.*

*(Terry Daum)*　　　　　　　　　　　　　　　　　　 *4-18-24*

_____　　　　　　　　_____
GRIEVANT'S SIGNATURE　　　　　　　　　　　　　　　　　DATE

_____　　　　　　　　_____
GRIEVANCE CLERK'S SIGNATURE　　　　　　　　　　　　　DATE

*An exception to the time limit may be requested under Directive #4040, Section 701.6 (g).
FORM 2133 (12/21)

1

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF RICHMOND * CRIMINAL * PART XI

------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK

    -against-             Indict:  148-96

TERRANCE DAUM,          Index:  10581-97

             Defendant

------------------------------------

    S E N T E N C E      County Courthouse
                   Staten Island, N.Y.
                   February 3, 1997

B E F O R E :

    HON. JOEL GOLDBERG,
        Justice of the Supreme Court

A P P E A R A N C E S :

    WILLIAM L. MURPHY, ESQ.
    District Attorney - Richmond County
    BY:  SUSAN DeJESUS ESQ.
    Assistant District Attorney

    DANIEL GREENBERG, ESQ.
    Attorney for Defendant
    Legal Aid Society - Richmond County
    BY:  LEONARD MARSILLI, ESQ.

                   John V. Stewart
                   Sr. Court Reporter

---

Proceedings

    THE CLERK:  This is a sentence, Indictment Number 148 of '96, Terrence Daum.  Note your appearance, counsels.

    MS. DeJESUS:  Susan DeJesus Penders from the Richmond County District Attorney's office.

    (Discussion between defendant and counsel.)

    MR. MARSILLI:  Application, your Honor.

    THE COURT:  Mr. Marsilli, note your appearance.

    MR. MARSILLI:  Leonard Marsilli from the office of Danny Greenberg for the defendant.  My client asked if sentence could be adjourned.  He has some personal problems which are pressing. He just wants a short adjournment.

    THE COURT:  Tell me the details and I'll be able to decide.

    MR. MARSILLI:  I have nothing.  He just spoke with me, your Honor.

    THE COURT:  I need to know the details.  I have to have a reason.

    MR. MARSILLI:  Tell the Judge.

    THE DEFENDANT:  My grandmother is old in Bayley Seton Hospital right now.  My family is coming up and we have alot of family problems so

— Exhibit — O —

Proceedings

I don't know what's going on with her but she's
having problems with her heart and I want to
make sure everything will be alright with her.

THE COURT: I'm not going to adjourn the
sentence for that reason because it's uncertain
as to what her condition is. In view of the
fact you won't be able to see her anyway,
there's really no point in adjourning sentence.

THE DEFENDANT: They're trying to get me to
the hospital to see her.

MR. MARSILLI: There might be a basis for a
hardship visit, your Honor.

THE DEFENDANT: She has a bad heart.

MR. MARSILLI: I have no direct knowledge
of this.

THE COURT: You can still have the hardship
visit after I sentence you. If there's a
hardship and the Department of Corrections will
allow it, if the City will allow it, the State
will allow it. That's not a legal reason to
adjourn the sentence.

Mr. Marsilli, you reserved motions until
the time of sentence. Do you wish to make them
now?

---

4

MR. MARSILLI: Yes, your Honor. I reserved
motions after the verdict was returned to set
aside the verdict as contrary to the weight of
the evidence and contrary to the law.

THE COURT: That motion is denied. Is the
defendant ready for sentence now other than the
request to adjourn it, which I've denied? Is
the defendant otherwise ready for sentence?

MR. MARSILLI: I know of no other reason to
adjourn this.

THE COURT: Do the People have a statement
to file?

MS. DeJESUS: We filed a second violent
felony statement.

THE COURT: You can go over that with the
defendant, Mr. Marsilli.

(Discussion between defendant and counsel.)

THE COURT: How many convictions are on
that statement?

MS. DeJESUS: I put two, Judge.

MR. MARSILLI: One is February 3rd and the
other is January 12.

THE COURT: He's going to be sentenced as a
second violent felony offender, which means he

---

Proceedings                    5

would have to successfully challenge both of
them, Mr. Marsilli. Arraign the defendant.

THE CLERK: Mr. Daum, you have been
provided with a statement by the District
Attorney according to Section 400.15 of the
Criminal Procedure Law which states you were
convicted and sentenced on a prior felony.

You may admit, deny or stand mute as to
whether you are the person convicted and
sentenced on that felony as recited in the
statement, that is to indictment 7361 of '92 in
Kings County, robbery in the second degree, date
of sentence being February 3rd, 1993. Also to
Indictment Number 10417 of '92 in Kings County
to attempted robbery in the second degree and
the date of sentence was January 12, 1993.

If you wish to deny the charges in that
statement or claim a violation of your
constitutional rights, you must state the ground
and you'll be entitled to a hearing before this
Court without a jury.

Mr. Daum, have you received a copy of this
statement? It's the one before you.

You must answer?

---

Proceedings                    6

THE DEFENDANT: Did I receive a copy of it?

THE CLERK: Yes.

MR. MARSILLI: It was through me, served on
the attorney.

THE DEFENDANT: I didn't get a copy but my
lawyer did.

THE CLERK: Have you discussed this matter
with your attorney, Mr. Marsilli?

THE DEFENDANT: Yes, briefly.

THE CLERK: Do you now admit the prior
convictions and sentence?

THE DEFENDANT: No.

THE COURT: You're claiming you're not the
person convicted under either of those, Mr.
Daum?

THE DEFENDANT: Yes.

THE COURT: Is that correct?

THE DEFENDANT: Uh-huh.

THE COURT: Mr. Daum, when we had a
Sandoval motion prior to trial and the
prosecutor said that if you took the stand they
would ask you about those convictions, I would
remind you that at that time you never said that
you never had those convictions.

**Proceedings 7**

If you want, I can put this case over for a hearing, Mr. Daum. You may be thinking about what the sentence is going to be in this case. You are aware that I have discretion in sentencing. I can sentence you anywhere between ten years and 75 years. So it really doesn't matter to me whether or not we adjourn this. I don't think it will be too hard to prove that's you but if that's what you want me to do, I'll put it over and think about what the sentence will be in this case.

(Discussion between defendant and counsel.)

MR. MARSILLI: Your Honor, he's telling me he wanted to put over the sentence for two weeks because he wants to get married he says. I understand he has a child out of wedlock. Is that right?

THE DEFENDANT: Yes.

MR. MARSILLI: So he wants to get married. That's the real reason why he wants the adjournment.

THE COURT: He had plenty of time to get married prior to the conviction in this case. I'm not going to let him get married at this

**Proceedings 8**

point.

Now if you want me to put this over for a hearing, Mr. Daum, I'll put it over for a hearing. I haven't made up my mind what the sentence is going to be. Between now and the time of sentence maybe you can give it some thought. There's a big difference between ten years and 75 years.

MR. MARSILLI: Your Honor, I submit my client --

THE COURT: And, by the way,, there is no parole involved here. Mr. Daum, you may not be aware of what you're facing here. You're facing a definite sentence, the minimum of which is ten and the maximum of which, if I run the sentences consecutively is 75 years. There's no parole on these sentences because the law has changed. The only time off you'll have is good behavior, which is not one third anymore. It's one seventh.

MR. MARSILLI: Your Honor, I'm sure the court is not intending to tell the defendant the sentence is contingent upon any hearing that might be necessary --

**Proceedings 9**

THE COURT: He can have a hearing and if we find he's not a persistant violent felony offender, then he's not subject to this. But if we find out he's a second violent felony offender, he is.

I have Probation's report here on it with your name on it that talks about these crimes, Mr. Daum. It's very specific about your background. You didn't want to talk to the Probation Department in this case but you did on the other case. I know the facts of the cases, I know who you are and what you did. It won't be hard to have a hearing and prove you were this person in at least one of them because that's all they have to prove.

Do you want an adjournment because you say you're not the person who was convicted of both of these crimes? If so, you can have it if that's what you want. You decide.

THE DEFENDANT: No.

MR. MARSILLI: We're ready for sentence, your Honor.

THE COURT: Now the second part is whether or not he believes there is any constitutional

**Proceedings 10**

violation.

MR. MARSILLI: Are you raising a constitutional question about those convictions?

THE DEFENDANT: Yeah. I don't know what happened. They're under appeal.

MR. MARSILLI: Are they under appeal now?

THE DEFENDANT: I don't know what's happening with them.

THE COURT: If they're under appeal and they're set aside, then this sentence will be set aside. Right now is he contesting the constitutionality of both these convictions, both of which were the result of guilty pleas, by the way.

MR. MARSILLI: Did you hear that? We're not talking about whether you were guilty or not guilty. We're talking about remedies with regard to hearings or rulings made by the Court. The question is are you saying were these convictions unconstitutional?

THE DEFENDANT: Yes.

MR. MARSILLI: And if so, why?

THE DEFENDANT: I don't know.

(Discussion between defendant and counsel.)

Proceedings    11

MR. MARSILLI: He still wants the adjournment, your Honor.

THE COURT: Is he raising the constitutionality issue.

MR. MARSILLI: Apparently, your Honor.

THE COURT: What are the grounds?

MR. MARSILLI: He states there was a violation of his Fourth and Fifth Amendment rights under the Constitution of the State of New York.

THE COURT: That is a conclusion. What are the facts?

MR. MARSILLI: I'm not prepared to give the Court facts. I did not assume he would raise constitutional issues. I don't know of any myself. He may have knowledge.

THE COURT: The meter is running. Let him tell you what the basis is.

(Discussion between defendant and counsel.)

THE COURT: Look, I have the probation report on Indictment Number 7361 of 1992. It says as to the facts of the case on or about June 19, 1992 at approximately 4:00 a.m. at the corner of Parkside Avenue and Bedford Avenue the

---

Proceedings    12

defendant, acting in concert with unapprehended others surrounded the complainant's vehicle, displayed a weapon, pulled the complainant out of the vehicle, took his watch, money and wallet. The defendant jumped into the vehicle and then drove away. The defendant was shortly thereafter arrested by a detective.

The defendant's statement to the Probation Department: He stated he pled guilty to get rid of the case. He added he is satisfied with his plea.

Now is your client saying he's not the person who pled guilty here?

MR. MARSILLI: He says he denied he ever gave permission to take that plea. May I be heard, please?

THE COURT: Yes.

MR. MARSILLI: I'm on trial upstairs with four other co-defendants. I have to be back there at 2:00 o'clock. I was given a stack of Rosario material at least an inch and a half thick. I haven't gone through it. The witness is going on the stand at 2:00 o'clock or thereabouts. I have to go back to my office --

---

Proceedings    13

THE COURT: I'll adjourn the sentence but just let me read from the second probation report. That's on indictment 10417 of 1992. That says on September 7, 1992 when the defendant was out on bail on the first case that I read about --

MR. MARSILLI: Excuse me, your Honor.

(Discussion between defendant and counsel.)

THE COURT: Let the record reflect the defendant is consulting with counsel.

THE COURT: I'm going to -- I want to clarify the issues. Does the defendant admit being the person convicted in the two offences? I read the first one.

MR. MARSILLI: I shall not speak for him, your Honor.

THE COURT: What?

MR. MARSILLI: I shall not speak for him.

THE COURT: Mr. Daum, do you admit being the person convicted of the prior offense concerning the incident on June 19, 1992? Was that you?

THE DEFENDANT: Yes, your Honor.

THE COURT: And on the second case that

---

Proceedings    14

took place at the Pacific Street Subway station at 6:20 a.m. involving where it is alleged you demanded the complainant's necklace and when the complainant refused to surrender her jewelry, you grabbed her and attempted to forcibly remove the chain and as a struggle took place you pushed the complainant to the ground. A subway transit police officer responded and arrested you about ten minutes later and no weapon was recovered. You pled guilty to attempted robbery in the second degree. Are you the person who was involved in that case?

THE DEFENDANT: Yes.

THE COURT: All right, now you pled guilty in two cases. Did you have a lawyer in both cases when you pled guilty?

THE DEFENDANT: I think so.

THE COURT: You have to show there was something unconstitutional about those convictions. In fact you have to show there was something unconstitutional about both those convictions because I only need one prior robbery case to find you a second violent felony offender. So you have to show both of these

Proceedings                    15

1  cases were unconstitutionally obtained and
2  you'll have to give a reason why you think they
3  were unconstitutionally obtained.  If you don't
4  have a reason, I'll find they were
5  constitutionally obtained.  If you do have a
6  reason, we'll look into it.
7
8      If you had a lawyer in that case and you
9  pled guilty in that case, then they were were
10 constitutionally obtained.  If they're on appeal
11 because of some legal reason, then if they're
12 both reversed, then this sentence will be
13 reversed because you won't have any prior felony
14 convictions.  But unless both of them are
15 reversed, all the law says is that you have to
16 have one prior felony conviction.  If you had
17 two prior felony convictions and if you were
18 found guilty on case number one before you
19 committed case number two, you would be facing a
20 life sentence now.  But you're not facing a life
21 sentence now because you weren't sentenced on
22 crime number one before crime number two was
23 committed.  So if you can't articulate a reason
24 why you think these sentences were
25 unconstitutionally obtained, I'm going to

Proceedings                    16

2  adjudicate you a second violent felony offender
3  at this point.  Do you have any reason why you
4  think these convictions were unconstitutionally
5  obtained?
6      THE DEFENDANT:  My lawyer was taking care
7  of that.  I don't really know.
8      THE COURT:  The defendant is found to be a
9  second violent felony offender.  He has not
10 articulated any reason why this Court should
11 find these cases, which were based on guilty
12 pleas, unconstitutionally obtained.
13     MR. MARSILLI:  Note my exception, your
14 Honor.
15     THE COURT:  People, do you wish to be heard
16 as to sentence?
17     MS. DeJESUS:  We do, Judge.
18     THE COURT:  Alright.
19     MS. DeJESUS:  Your Honor, as the Court is
20 aware, this defendant was found guilty after
21 trial on eight counts involving three separate
22 incidents.  The defendant could receive 10 to 25
23 years consecutive on each separate incident.
24 The bottom line, Judge, and we'll give our
25 reasons set forth afterwards, the People will be

Proceedings                    17

2  asking for on the October 23rd, 1995 incident,
3  the defendant receive a sentence of 20 years
4  consecutive with the crime of 10/30 of '95, 20
5  years, 11/3/95, 20 years, a total of 60 years.
6  The People are aware there will be an
7  adjournment based on Penal Law 70.30 and
8  Corrections Law 803 2-D involving the defendant
9  only doing a determinant sentence of 50 years.
10 For this reason we're asking for this high
11 sentence.
12     As the Court is aware, the defendant is
13 just 24 years old --
14     THE COURT:  The probation report says 27.
15     MS. DeJESUS:  27?  I of course, Judge, read
16 from his rap sheet which indicated 1973.  That's
17 how I calculated it.  Regardless, Judge, he's
18 still in his twenties.  From his rap sheet as
19 well as the documents the People received, in
20 1987 when the defendant was, according to my
21 calculations, about 15, possibly older based on
22 the probation report, the defendant received the
23 benefit of YO treatment.  In that case the
24 defendant was adjudicated a youthful offender.
25 The crime was attempted murder, a B Felony, and

Proceedings                    18

2  received the benefit of one to three years early
3  on in his career.  Just after that, Judge, June,
4  1992, again, according to my calculations still
5  in his teens but possibly early twenties, the
6  defendant pled guilty and was given a plea
7  bargain.  He received the benefit of state time
8  of one and a half to four and a half years but
9  as the Court is aware, he was deemed an
10 absconder based on that benefit.
11     Shortly after that, Judge, while still out
12 on bail, the defendant was convicted, again,
13 based on a plea of guilty in September of 1992.
14 Again, Judge, he was still in his early
15 twenties, late teens.  He was given another
16 benefit, city time for attempted robbery in the
17 second degree.  Again, Judge, in July of 1994
18 the defendant was arrested again and again given
19 one year city time.  That was also part of a
20 plea bargain.
21     What the Court is possibly not aware of is
22 that this defendant also has open cases.  He has
23 two open cases in Brooklyn.  These cases are
24 quite similar --
25     MR. MARSILLI:  I object to this, your

Honor.  First of all, there is a probation

record.  Secondly we have open cases where a man

is arrested and charged with crimes.  I don't

think that should be part of his conviction

record.

MS. DeJESUS:  Again I didn't say conviction

record but I believe it's important for the

Court to know --

MR. MARSILLI:  Then there's no reason to

bring it up, your Honor.

THE COURT:  These are pending indictments.

I'll listen to the facts for what they're worth.

Go ahead.

MS. DeJESUS:  There are two open cases in

Brooklyn.  I had an opportunity to review these

documents as well.  These cases are quite

similar to the ones on trial.  In fact they fit

sequentially to the crimes which the People

tried.  One crime occurred on October 1, 1995.

In this case defendant again, acting with

others, went to a deli store, a supermarket, and

again weapons were displayed, a knife and a gun

and over a thousand dollars were removed.

Another crime he faces is January 29, 1996.

---

This case again involves a restaurant where this

defendant was acting again with others and

displayed a rifle and again monies were removed.

Line-ups were conducted.  Surveillance videos

are in those crimes as well.

What the Court should also know is this

defendant also faces an open case in Staten

Island.  That case occurred on September 2,

1995.  The defendant was arrested for attempted

burglary.  In this case it was a Pizza Hut in

Staten Island where the defendant was making a

hole in the roof of the Pizza Hut.  He was

apprehended by a police officer and identified

by a police officer.  Burglars tools were found

in the area and defendant was apprehended

minutes after.

There is another matter which the People

would like to bring to the Court's attention.

This is an open matter.  There is no open

indictment on this matter.  It's a case

involving a name which is familiar to the Court

based on the trial, Michael Acevedo.  It

involves the robbery of Always The Best jewelry

store.  This incident occurred on November 4,

---

Proceedings    21

1995, one day after one of the crimes he was

convicted of.  In this case there is a

surveillance video and the defendant's face is

portrayed in that surveillance video.  Again

weapons were displayed.  People were placed down

on the floor, thrown to the floor and monies

were taken.

As to the three incidents for which the

defendant was convicted on, in all three

incidents a weapon was displayed and defendant

was convicted for displaying that weapon.  In

all three incidents people were thrown to the

ground and in one of those incidents somebody

was hit with a gun.

As the defendant's record reflects, Judge,

the defendant has had a pattern of robberies and

burglaries in his early age.  He has proven,

Judge, even with the benefits of youthful

offender treatment, even with the benefit of

plea bargaining and minimal time, city time, he

proved to be an absconder and continued a

pattern of criminal activities.

Based on his age and his continuous violent

criminal activity, the People ask this defendant

---

Proceedings    22

be sentenced to 60 years.

THE COURT:  Mr. Marsilli?

MR. MARSILLI:  Your Honor, I submit the

Court, by permitting the District Attorney not

only to recite his past convictions but all

kinds of arrests and giving specific and minute

details about these open allegations, the Court

has permitted the District Attorney to

completely contaminate the whole sentencing

procedure.

THE COURT:  For the record, it hasn't

changed my mind as to what I would sentence him

to.

MR. MARSILLI:  We don't know that, your

Honor.  The fact of the matter is you permitted

her to do this and there is no right for the

District Attorney to do this or the Court to

permit it.  I submit this whole sentencing

procedure has been contaminated beyond repair.

THE COURT:  That's not true.  The Court is

allowed to consider pending cases and the

defendant's background and that is what the

People have put on the record.  That's why you

have a right to be heard.

MR. MARSILLI: I've been heard, your Honor.
Thank you.

THE COURT: Mr. Daum, do you wish to say
anything?

THE DEFENDANT: (No verbal response.)

THE CLERK: Is that a no, sir?

THE DEFENDANT: I want to appeal this
decision.

THE COURT: All right, thank you.

The probation report indicates this
defendant refused to speak with the Probation
Department. However, attached are three prior
probation reports which the Court has examined
regarding this defendant. I've already put on
the record the facts concerning two of the
defendant's prior convictions. The third
probation report attached relates to the
youthful offender treatment this defendant
received on charges involving attempted murder
and robbery which occurred on July 15, 1989
where an off-duty corrections officer was shot
during the course of a robbery and the probation
report also indicates that at age 13 the
defendant received a Division For Youth sentence

---

Proceedings                                24

of one year, also for charges involving a
robbery and then in addition the defendant had a
misdemeanor conviction resulting from a robbery
arrest in 1994. So it's clear that for many
years the defendant has exhibited a pattern of
robbery even disregarding the pending cases that
the People have mentioned.

In view of the defendant's record involving
robberies and in view of the treatment that the
legislature has authorized for these crimes,
particularly people with prior robbery
convictions, I would note that had the defendant
not received youthful offender treatment for
robbery or if the defendant had been convicted
of the carjacking robbery prior to commission of
the attempted robbery in the subway, either one
of these robberies would now mandate that the
defendant be facing a life sentence for which,
if these minimum sentences were imposed to run
consecutively, would not be reduced to 50 years.
Nevertheless, the defendant is to be treated as
if he has only one prior robbery conviction for
purposes of this sentencing, even though he has,
in essence, three robbery convictions.

---

Proceedings                                25

With all who of those convictions in mind
and based on the facts and circumstances of
these cases, the Court sentence is as follows:
For the robbery in the first degree and the
robbery in the second degree committed on
October 23rd, 1995, the sentence on each of
those is 15 years to run concurrent.

On the two counts of robbery in the first
degree and the two counts of robbery in the
second degree committed on October 30, 1995 in
the second deli, the sentence on each of those,
both the robbery in the first degree and robbery
in the second degree, is 15 years to run
concurrent with each other but consecutive to
counts one and two.

On the robbery in the first degree and
robbery in the second degree on November 3rd,
1995 in the third deli, the sentence is 15 years
on each of those robberies to run concurrent
with each other but consecutive to the sentences
imposed on counts one and two and three, four,
five and six. That would be a total determinant
sentence of 45 years without parole. The
defendant is to receive time off for good

---

Proceedings                                26

behavior in accordance with the Corrections Law,
which I believe is one year for every seven that
he serves. In addition, there is $150 surcharge
and a $5 crime victim assistance fee that he'll
pay from his inmate's fund. This sentence will
run consecutive to any parole time he has.

THE CLERK: You are advised you have a
right to appeal the sentence of this Court by
filing a notice of appeal with the clerk of the
court with a copy to the District Attorney within
thirty days. If you cannot afford to retain
counsel for that purpose, you may apply to the
Appellate Division Second Department at 45
Monroe Place, Brooklyn and request counsel be
assigned to you for the purpose of processing
your appeal.

Officer, take charge.

oOo

Certified to be a true and
accurate transcription of the
minutes taken in the above-
captioned matter.

John V. Stewart
Official Court Reporter

| NEW YORK STATE **Corrections and Community Supervision** | GRIEVANCE NO. - 2 | HEARING DATE 11/18/2024 |
|---|---|---|
| | GRIEVANT NAME DAUM, T. | DIN 97A1295 |
| INCARCERATED GRIEVANCE PROGRAM | FACILITY Attica | HOUSING UNIT A 16-20 |
| **IGRC HEARING RESPONSE** | HELD IN ABSENTIA [X] YES [ ] NO  If yes, why: no show | |

**Response of IGRC:** Grievant asserts not getting proper medical care for their kidney concerns, and requests to be moved to another facility providing better care. -- NA N. investigated and stated an I/I cannot self-diagnose and request treatment. Medical is awaiting approval for a GI scope for diagnostic of the issue, with blood work scheduled soon. Based on the information provided, the grievance is DENIED but it is noted the grievant is receiving proper medical care at this time.

Per Directive #4040 §701.5 (b)(2)(ii)(b) If the grievant does not appear for the hearing without a legitimate reason (visit, hearing, sick call, keep lock, etc.) the IGRC will hold a hearing in absentia.

Chairperson: _____

IGRC Members: _____

_____

_____

IGRC
NOV 18 2024

Date Returned to Grievant: _____

**Appeal:** *The NA misrepresented that I'm awaiting GI diagnosis since the ECMC Provider stated that GI doesn't and is not, testing for kidney issue.*

If you wish to appeal, please check the appropriate box below and return within 7 calendar days to the IGRC office at the facility where the grievance was filed.*

[ ] I disagree with the IGRC response and wish to appeal to the Superintendent.

[ ] I have reviewed the Deadlocked response. Refer to Superintendent.

[ ] I agree with the IGRC response and wish to appeal to the Superintendent.

[ ] I want to apply to the IGP Supervisor for review of the IGRC dismissal.

Grievant Signature: _Terry Daum_    Date: 11-20-24

*An exception to the time limit may be requested under Directive #4040, § 701.6 (g).

---

**To be completed by Grievance Clerk**

Grievance Clerk Signature: _____    Date Received: _____

Date Forwarded to Superintendent For Action: _____

FORM 2131E (Reverse) (12/21)

"Exhibit - Q"

To: Attica CF - Medical
    F.H.S.D.

From: Terry Daum
      # 97A1295    A-11-20

Date: November 18, 2024

Re: Complaint

Dear Facility Health Service Director,

This complaint involves medical neglect. I was involved with a brutal battery and assault on or about August 7, 2024, by multiple officers at two prisons on the same day. Both incidents were captured on video surveillance and the Chief, Office of Special Investigations, Darren T. Miller is investigating. Senator, Julia Salaazers office is also involved.

1. During the medical interview(s) and video will and does show, the Sergeant at Upstate CF, spit on a paper towel, attempting to wipe blood, potentially attempting to assess, the extent of the wound (on my head-ear area). His spit was in direct contact with the open wound. I have requested blood test, full-scan and H.I.V. testing. This, as of this date, never occurred. Today, I went for blood test and was advised that the testing would not test for any diseases. The blood testing was not a full-scan. I explained to the person (taking blood) today, that I was brutally attacked and the Sergeant used his spit to clean the wound, rather, asses the wound.

-1-    "Exhibit- Q"

The person doing my blood work, promised that she would speak to the Provider (or someone) about the complaint and my persistent for blood work - full scan, including H.I.V., etc. Upon belief, she spoke to medical because she left the room saying she would do it now.

2. I also have a pending grievance # 2969-24, involving inadequate medical, which involves constant pain to my left kidney. These pains occured around the time - immediately after the August 7, 2024 incident. I also went to sick-call complaining and write letters to medical; and, I complained to my E.C.M.C. Provider recently, during a gastro consultation.

3. I'm also requesting follow-up x-rays for my right ankle, left hip, ribs, face and both ribs - I'm experiencing pain alot (and shoulder pains too). Although Upstate CF did x-rays, I dont recall x-rays to my wrists. I am aware, its a medical <u>fact</u> that fractures can go undetected for a period of time. I'm experiencing pains in the above - mentioned areas, this is why I'm I'm asking you directly to provide me with x-rays and treatment, testing, etc. I'm not feeling well and I'm in pain. Thank you for your time in resolving this complaint, or transfer me to a place where I can receive treatment.

Respectfully,

Jerry Down

c.c.

File

-2-   " Exhibit - Q "

| NEW YORK STATE Corrections and Community Supervision | Grievance Number GM-63072-18 | Desig./Code I/22 | Date Filed 04/23/18 |
|---|---|---|---|
| | Associated Cases | | Hearing Date 08/14/19 |
| ANDREW M. CUOMO  Governor   ANTHONY J. ANNUCCI  Acting Commissioner | Facility Great Meadow Correctional Facility | | |
| INMATE GRIEVANCE PROGRAM CENTRAL OFFICE REVIEW COMMITTEE | Title of Grievance Denied Emergency Sick Call | | |

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon a full hearing of the facts and circumstances presented in the instant case, and upon recommendation of the Division of Health Services, the action requested herein is accepted in part.

CORC notes that the grievant's complaint has been reviewed by the Division of Health Services' staff who advise that a complete investigation was conducted and that the grievant has received appropriate treatment. CORC further notes that CO C... denies refusing the grievant medical attention and states that he never requested emergency sick call on 4/17/18. CORC finds no evidence of improper medical care or malfeasance by staff.

With respect to the grievant's appeal, CORC notes that he was interviewed by Sgt. G... on 5/17/18 and he requested no witnesses at that time or in his written complaint. CORC upholds the discretion of the facility administration to review videotapes when deemed necessary based on security concerns, unusual incidents, grievance investigations, etc. CORC recommends that the grievant address any further medical concerns to medical staff via established sick call procedures.

MXV/

------------------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------------------

" Exhibit - R "

This document has been electronically signed by Shelley M. Mallozzi

| | Grievance Number SUL-0403-20 | Desig./Code I/22 | Date Filed 06/10/20 |
|---|---|---|---|
| **NEW YORK STATE** Corrections and Community Supervision | Associated Cases SUL-0430-20 | | Hearing Date 09/24/20 |
| ANDREW M. CUOMO Governor    ANTHONY J. ANNUCCI Acting Commissioner | Facility Sullivan Correctional Facility | | |
| INMATE GRIEVANCE PROGRAM CENTRAL OFFICE REVIEW COMMITTEE | Title of Grievance No Medical Treatment | | |

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon a full hearing of the facts and circumstances presented in the instant case, and upon recommendation of the Division of Health Services, the action requested herein is accepted in part.

CORC notes that the grievant's complaint has been reviewed by the Division of Health Services' staff who advise that a complete investigation was conducted and that the grievant is receiving appropriate treatment. It is noted that he was evaluated by a gastroenterologist and treated for duodenitis. His endoscopy was deferred by the RMD pending conservative treatment, and his provider increased the Prilosec. Further, he received his medications as ordered and continues to receive medical care with provider appointments, specialist consultations, diagnostic tests and lab work. CORC also notes that the grievant's medication concerns were addressed in SUL-0269-20, dated 8/20/20, and that his allegations regarding medical delays were addressed in SUL-0337-20, dated 9/17/20. CORC further notes that pandemic guidelines were utilized and finds insufficient evidence of malfeasance by staff or a delay in the grievant's medical care.

CORC asserts that the IGP is not intended to support an adversary process, and notes that the grievant may write to whomever he wishes regarding this complaint as long as they are not on his Negative Correspondence and Telephone list. CORC advises him that the accuracy of medical records can be challenged in accordance with HSPM, Item #4.02.

CORC notes that the grievant has raised separate issues in his appeal statements that were not addressed in his original complaints. CORC asserts that, consistent with HSPM #1.43 , the Facility Health Services Director (FHSD) is responsible for all aspects of incarcerated individual care, including referrals for outpatient care. Outside specialists may only make recommendations for treatment; however, the implementation of those recommendations is at the discretion of the provider and FHSD based on their professional judgment. CORC recommends that the grievant address any further medical concerns directly to medical staff via established sick call procedures.

JNA/

----------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

"Exhibit - R"

This document has been electronically signed by Shelley M. Mallozzi

| NEW YORK STATE Corrections and Community Supervision | Grievance Number SUL-0635-20 | | Desig./Code I/22 | Date Filed 08/28/20 |
|---|---|---|---|---|
| | Associated Cases | | | Hearing Date 02/11/21 |
| ANDREW M. CUOMO Governor    ANTHONY J. ANNUCCI Acting Commissioner | Facility Sullivan Correctional Facility | | | |
| INMATE GRIEVANCE PROGRAM CENTRAL OFFICE REVIEW COMMITTEE | Title of Grievance Nurse Unprofessional | | | |

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon a full hearing of the facts and circumstances presented in the instant case, and upon recommendation of the Division of Health Services, the action requested herein is accepted in part.

CORC notes that the grievant's complaint has been reviewed by the Division of Health Services' staff, who advise a complete investigation was conducted and he is receiving appropriate treatment. He presented at emergency sick call on 8/21/20 for complaints of abdominal pain, and was subsequently seen by the gastroenterologist on 8/27/20 and 11/25/20. In addition, he had an endoscopy done on 9/10/20 and an abdominal CT scan completed on 9/21/20. It is noted that RN T... is no longer employed by DOCCS and was unavailable to provide input regarding the instant complaint.

CORC asserts that all DOCCS staff are bound by HIPAA confidentiality requirements, and upholds the discretion of the facility administration in the assignment of staff.

With respect to the grievant's appeal, CORC finds insufficient evidence of improper care or malfeasance by staff and advises him to address further medical concerns via sick call for the most expeditious means of resolution.

CMV/

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

" Exhibit - R"

This document has been electronically signed by Shelley M. Mallozzi

| | Grievance Number SUL-0087-21 | Desig./Code I/22 | Date Filed 02/17/21 |
|---|---|---|---|
| NEW YORK STATE **Corrections and Community Supervision** | Associated Cases | | Hearing Date 05/13/21 |
| ANDREW M. CUOMO Governor     ANTHONY J. ANNUCCI Acting Commissioner | Facility Sullivan Correctional Facility | | |
| INMATE GRIEVANCE PROGRAM CENTRAL OFFICE REVIEW COMMITTEE | Title of Grievance Denied Sick Call/See Doctor & Specialist | | |

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon a full hearing of the facts and circumstances presented in the instant case, and upon recommendation of the Division of Health Services, the action requested herein is accepted in part.

CORC notes that the grievant's complaint has been reviewed by the Division of Health Services' staff who advise that a complete investigation was conducted and that the grievant is receiving appropriate treatment. CORC further notes that he was seen at sick call in 2/2021, however, he did not make any complaints regarding gastric issues. CORC also notes that there is no evidence that emergency COVID-19 pandemic and infection control protocols were not followed. The Department's paramount concern at this time is to make every reasonable effort to ensure the health and protection of all incarcerated individuals and staff relative to the COVID-19 pandemic, which is also affecting all New Yorkers. Facility Superintendents are briefing ILCs on a regular basis to ensure the sharing of information.

CORC advises the grievant that the accuracy of medical records can be challenged in accordance with HSPM, Item #4.02.

CORC asserts that, consistent with HSPM #1.43, the Facility Health Services Director (FHSD) is responsible for all aspects of incarcerated individual care, including referrals for outpatient care. CORC advises the grievant that he may request a second opinion from a specialty consultant of his choice by making the necessary arrangements and assuming financial responsibility as specified in HSPM Item #7.02.

CORC recommends that the grievant address any further medical concerns to medical staff via established sick call procedures.

RAL/

--------------------------------------------------------------------------------
--------------------------------------------------------------------------------



"Exhibit - R"

This document has been electronically signed by Shelley M. Mallozzi

| NEW YORK STATE | Corrections and Community Supervision | Grievance Number SUL-0221-21 | Desig./Code I/22 | Date Filed 05/19/21 |
|---|---|---|---|---|
| ANDREW M. CUOMO Governor | ANTHONY J. ANNUCCI Acting Commissioner | Associated Cases | | Hearing Date 07/29/21 |
| | | Facility Sullivan Correctional Facility | | |
| INMATE GRIEVANCE PROGRAM CENTRAL OFFICE REVIEW COMMITTEE | | Title of Grievance See Specialist For Chest Pain | | |

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon a full hearing of the facts and circumstances presented in the instant case, and upon recommendation of the Division of Health Services, the action requested herein is accepted in part.

CORC notes that the grievant's complaint has been reviewed by the Division of Health Services' staff who advise that a complete investigation was conducted and that the grievant is receiving appropriate treatment. CORC further notes that the grievant has been evaluated by his provider who determined that specialty care is not necessary at this time. In addition, he is scheduled for an ultrasound in the near future and continues to receive medical care.

CORC recommends that the grievant address any further medical concerns to medical staff via established sick call procedures.

HLK/

------------------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------------------

" Exhibit - R "

This document has been electronically signed by Shelley M. Mallozzi

| NEW YORK STATE **Corrections and Community Supervision** | Grievance Number **SUL-0425-21** | Desig./Code **I/22** | Date Filed **09/21/21** |
|---|---|---|---|
| | Associated Cases | | Hearing Date **01/13/22** |
| KATHY HOCHUL  Governor    ANTHONY J. ANNUCCI  Acting Commissioner | Facility **Sullivan Correctional Facility** | | |
| **INCARCERATED GRIEVANCE PROGRAM** **CENTRAL OFFICE REVIEW COMMITTEE** | Title of Grievance **See GI Specialist/Stomach Pain** | | |

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon a full hearing of the facts and circumstances presented in the instant case, and upon recommendation of the Division of Health Services, the action requested herein is accepted in part.

CORC notes that the grievant's complaint has been reviewed by the Division of Health Services' staff, who advise that a complete investigation was conducted and the grievant is receiving appropriate treatment. It is noted that the grievant was seen at sick call multiple times, evaluated by the provider and is prescribed Dicyclomine. The FHSD is the determinant of the treatment plan including specialty care referrals. The grievant continues to receive medical care.

CORC recommends that the grievant address any further medical concerns to medical staff via established sick call procedures.

MXV/

------------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------------

" Exhibit - R "

This document has been electronically signed by Shelley M. Mallozzi



**NEW YORK STATE**

# Corrections and
# Community Supervision

**KATHY HOCHUL**
Governor

**DANIEL F. MARTUSCELLO III**
Acting Commissioner

September 5, 2023

Terence Daum, 97A1295
Auburn Correctional Facility
135 State Street
Auburn, NY 13024-9000

Dear Mr. Daum:

This is in response to your recent letter regarding your health care.

The Division of Health Services has investigated your concerns with the Health Services staff at Auburn Correctional Facility. I've been advised that you were seen by a primary care provider on July 25, 2023, and by the physical therapy specialist on July 14, 2023, and that you have been scheduled for a course of physical therapy treatment. I've also been advised that a referral for another appointment with a primary care provider has been entered by staff. Please be reminded that your primary care provider is the determinant of your medical care and treatment plan.

It is suggested that you continue to bring your medical concerns to the attention of the health care staff using the existing sick call procedure.

Sincerely,

*Carol Moores*

Carol A. Moores, MD, MPH, MSHA
Deputy Commissioner/Chief Medical Officer
Division of Health Services

CM/sma

cc: DSA, FHSD, Auburn Correctional Facility

"Exhibit - R"

Edward De Cordova
For Terry Daum  DIN. # 97A1295
Attica Correctional Facility
639 Exchange Street
Attica, N.Y. 14011



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 05 2025 ★

BROOKLYN OFFICE

Eastern District Of New York
Clerk Of The Court
225 Cadman Plaza East
Brooklyn, New York 11201



**UNITED STATES POSTAL SERVICE.**    *Retail*

**P**

US POSTAGE PAID
**$9.35**

Origin: 10804
01/29/25
3557870078-89

PRIORITY MAIL®

0 Lb 13.50 Oz

**RDC 03**

EXPECTED DELIVERY DAY: 02/01/25

SHIP
TO:

C030

 225 CADMAN PLZ E
BROOKLYN NY 11201-1832

USPS TRACKING® #



9505 5154 3991 5029 1881 37

